[Civ. No. 11453.   Second Appellate District, Division Two.—July 19, 1937.]

MILDRED GILMORE, Appellant, v. EMSCO DERRICK & EQUIPMENT COMPANY (a Corporation) et al., Respondents.

Irvin C. Louis and H. B. Pool for Appellant.

Swanwick, Donnelly & Proudfit and Tom W. Henderson for Respondents.

WOOD, J.—Plaintiff appeals from a judgment denying her petition for an order directing the individual defendants as officers of defendant corporation to permit plaintiff to examine the share register of the corporation and make extracts therefrom.

Plaintiff purchased ten shares of stock of defendant corporation through a broker on the Los Angeles Stock Exchange. She thereupon made written demand upon defendants to be allowed to inspect the records of the corporation. She was furnished with a statement certified by the secretary of the corporation containing the names of the officers and directors, seven in number, and the amount of shares owned by each. She was not permitted to examine and make extracts from the share register, containing approximately one thousand names. Defendants by their answer allege that ''plaintiff's sole purpose in prosecuting the within action is not to secure an examination of the corporate records of defendant Emsco Derrick & Equipment Company for any purpose reasonably related to her interests as a shareholder of said corporation, but for the purpose of procuring the names of the shareholders and other information concerning the corporation in order to carry out a plan designed to result in serious detriment to and harassment of said cor-

poration''. The trial court found this allegation to be true. Plaintiff now contends that there is no substantial evidence to sustain this finding.

Plaintiff testified that there had been federal indictments against an eastern corporation in which the directors in defendant corporation were the same as the directors in that corporation, and in which there had been considerable difficulty regarding shareholders of record not being *bona fide*, that checks had been paid to them, and endorsed and given back to the men who were the major shareholders in this corporation. That she wanted to ascertain whether the record stockholders of defendant corporation are real stockholders, and whether dividends are being paid to *bona fide* holders of stock; that she had not been requested by any other party to obtain the information sought, had never investigated the corporation or its officers, had no client interested in them, had purchased the stock for herself for an investment and had bought it with her own money. When called as a witness for the defendant, plaintiff testified as follows: ''Q. You said your occupation was that of an attorney? A. Yes. Q. How long have you been engaged in the practice of law? A. A little over a year. Q. Are you also connected with the J. N. Pyles National Detective Service? A. Yes, I am their attorney. Q. Are you not also an executive of that company? A. Yes. Q. What is your connection with the J. N. Pyles Detective Agency? A. I am their attorney, and, to a certain extent, act in an executive capacity when Mr. Pyles is out of the City, or engaged so that he cannot act. Q. Do you act as manager of the concern? A. No, I am not the manager. Q. Do you act as investigator for the concern? A. No.'' Plaintiff's testimony was not contradicted. The secretary of the corporation testified that he had refused permission to make the extracts because he wanted to protect the stockholders. He further testified: ''Q. And, for that reason, you claim it does not concern her? A. That is one reason. Q. What other reasons have you? A. There is some ulterior motive back of it. Q. What has she said or done to lead you to that conclusion? A. Her actions all the way through. Q. What actions all the way through? A. They have all been stipulated here. Q. Tell us what she had done to lead you to believe that? A. Her whole environment. Q. What has she done to lead you to believe that? A. Well, she has been an investigator, and has been working for de-

tective agencies, according to her own testimony, throughout the years."

■ By section 355 of the Civil Code a shareholder of a corporation is given the right to examine the share register of the corporation upon written demand "for a purpose reasonably related to his interests as a shareholder". The inspection includes the right to make extracts. It is manifest that plaintiff must be accorded the right to inspect the list of shareholders and make extracts therefrom unless it be shown that her demand was not for any purpose reasonably related to her interest as a shareholder. The trial court did not find that the demand of plaintiff for an inspection was connected with her employment as a detective or that she desired to obtain information in the course of the business of a detective or investigator. Plaintiff gave a reasonable motive for demanding the inspection of the list of shareholders. She was refused because suspicion was aroused in the mind of the corporation secretary, but this suspicion is not sufficient to sustain the finding of the trial court unless it is based upon adequate facts. The fact that plaintiff was an attorney for a detective agency and acted "to a certain extent in an executive capacity" during the absence of the manager, does not establish that the information was desired for an ulterior purpose in the absence of proof showing that the information was desired for use in the course of the business of the detective agency. The mere fact that a shareholder is connected with a detective agency does not of itself operate to nullify his rights of inspection accorded by law. Plaintiff's allegations showing that her purpose was reasonably related to her interests as a shareholder are amply supported by uncontradicted testimony. Defendant's contrary allegations are not supported by the evidence.

The judgment is reversed.

Crail, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 12, 1937, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 16, 1937.