[No. F014133. Fifth Dist. Dec. 2, 1991.]

ANTONIO RODRIGUEZ et al., Plaintiffs and Appellants, v.
ALVIN P. SOLIS, as Director, etc., Defendant and Respondent.

COUNSEL

Forrest & McLaughlin, Jeffrey L. Wall and William T. McLaughlin II for Plaintiffs and Appellants.

Harvey Wallace, City Attorney, and Edwin A. Oeser, Assistant City Attorney, for Defendant and Respondent.

OPINION

BUCKLEY, J.—This is an appeal from a judgment denying appellants' petition for writ of mandate to compel respondent Director of Development for the City of Fresno (Director) to issue permits to erect freestanding signs on the premises of the Rodway Auto Center.

BR Enterprises (BR), a California general partnership, and Shasta Enterprises (Shasta), a California general partnership, are record owners of the property where Rodway Auto Center is located. Rodway Hyundai, a California corporation, doing business as Rodway Hyundai-Jeep/Eagle; Fresno Imports, a California corporation, doing business as Fresno Toyota Isuzu; Valley Imports, a California corporation, doing business as Rodway Mazda Buick; and Century Ford, a California corporation, doing business as Rodway Auto Center Auto Body, sell and service automobiles at Rodway Auto Center. Antonio Rodriguez, an individual, is the managing general partner of BR and Shasta and sole shareholder of the corporations involved in this appeal. (The parties are hereafter collectively referred to as appellants.)

Since 1987, appellants have developed Rodway Auto Center as a single automobile sales and service complex. Rodway Auto Center is located in the City of Fresno on approximately 27 acres bordered by Freeway 41 on the east, Bullard Avenue to the north and Blackstone Avenue to the west. In 1988, appellants submitted a permit application with the Director to erect

two freestanding signs identifying the names "Ford" and "Mazda" for advertisement purposes. The permit was approved and the signs were placed within 50 feet of Freeway 41. The procedure for processing permit applications was thereafter reorganized by the Director because of his concern that "staff was not adequately reviewing the signs . . . in accordance with Section 13-902."

On February 27, 1989, appellants submitted sign permit application 89-42 to erect a 28-foot high freestanding advertising sign on the eastern border of the property within 50 feet of Freeway 41 and south of the Mazda sign. This application was conditionally approved subject to complying with the 50-foot setback restriction.[1]

Appellants requested a variance of the 50-foot setback requirement with the Fresno City Planning Commission, which was denied. On October 12 and December 5, 1989, appellants filed sign permit applications for approval to erect freestanding advertising signs on the eastern portion of the property outside the 50-foot setback area.

In December 1989, the Director denied all three sign permit applications on the ground that the signs would not be compatible with the landscaped environment of Freeway 41. The petition for writ of mandate followed.

DISCUSSION

I.

*Did the Director have a ministerial duty to issue the sign permits?*

Appellants petitioned for traditional mandamus pursuant to Code of Civil Procedure section 1085 to compel the Director to issue permit applications. Generally, Code of Civil Procedure section 1085 may only be employed to compel the performance of a duty which is purely ministerial in character. (*State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 247 [115 Cal.Rptr. 497, 524 P.2d 1281].)

A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists. Discretion, on the

---

[1]Rodway Auto Center is located in a commercial district which prohibits signs and advertising structures within 50 feet of a residential district where Freeway 41 is now located when such signs face the residential district.

other hand, is the power conferred on public functionaries to act officially according to the dictates of their own judgment. (*People* ex rel. *Fund American Companies* v. *California Ins. Co.* (1974) 43 Cal.App.3d 423, 431 [117 Cal.Rptr. 623].)

The trial court denied the petition by concluding in pertinent part that the Director was not under a ministerial duty to issue the permits. ■ In reviewing the trial court's ruling on a writ of mandate, the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial, credible and competent evidence. This limitation, however, does not apply to resolution of questions of law where the facts are undisputed. In such cases, as in other instances involving matters of law, the appellate court is not bound by the trial court's decision, but may make its own determination. (*Evans* v. *Unemployment Ins. Appeals Bd.* (1985) 39 Cal.3d 398, 407 [216 Cal.Rptr. 782, 703 P.2d 122].)

■ Whether the Director had a ministerial duty to issue the permit applications is dependent upon the interpretation of the relevant municipal code provisions. ■ Statutory construction is a question of law for the courts and the rules of statutory construction applicable to statutes are also applicable to local ordinances. (*Aptos Seascape Corp.* v. *County of Santa Cruz* (1982) 138 Cal.App.3d 484, 497 [188 Cal.Rptr. 191].)

The property where Rodway Auto Center is located is in the C-6 heavy commercial district. Chapter 12 of the Municipal Code of City of Fresno,[2] entitled "City Planning," includes the city's comprehensive zoning ordinance. The applicable restrictions on outdoor advertising in the C-6 district are found in section 12-222.5-K in article 2 which provides:

"Signs and advertising structures may be permitted in the 'C-6' District under the conditions set forth in the following paragraph:

". . . . . . . . . . . . . . . . . . . . . . . .

"3. Size. The provisions of Section 12-306-K shall apply."

Section 12-306-K provides:

"Signs, billboards and advertising structures may be erected and maintained in any district where such use is permitted, *subject to Article 2 of Chapter 12 and Articles 9 and 10 of Chapter 13 of this Code.*" (Italics added.)

---

[2]All references are to the Municipal Code of City of Fresno unless otherwise indicated.

Chapter 13 is entitled "Buildings and Signs." Section 13-906 of article 9, referred to as "Sign Ordinance," requires an issuance of a permit before a sign may be installed. The procedure in processing such applications is set forth in section 13-907:

"PROCESSING SIGN PERMIT APPLICATIONS. Applications for a sign permit shall be filed with the Building Official. The Building Official shall review sign permit applications within seven (7) working days after the application has been accepted as complete and shall make a determination to either approve, conditionally approve, or deny the application. This review shall consider the size, design, colors, character and *location* of the proposed signs. *The Building Official shall not approve a sign permit application unless he finds the proposed sign is consistent with the intent and provisions of this article.*" (Italics added.)

The Director denied the permit applications pursuant to subdivision (b) of section 13-902 of article 9, entitled "SIGNS," which states in full:

"The purpose of this article is to promote and protect the public health, safety and welfare by regulating existing and proposed signs of all types within the city in order to assure that they are:

"(a) Legible in the circumstances in which they are seen;

"(b) *Compatible with their surroundings*;

"(c) Appropriate to the type of activity to which they pertain;

"(d) Expressive of the identity of individual properties or of the community as a whole; and

"(e) Constructed, altered and repaired according to accepted and approved standards." (Italics added.)

Article 10 of that chapter is entitled "SIGNBOARDS ON PROPERTY ADJACENT TO LANDSCAPED FREEWAYS." Section 13-1002 states:

"No advertising display shall be placed or maintained on property adjacent to a section of freeway which has been or hereafter may be landscaped . . . if the advertising display is designed to be viewed primarily by persons traveling on such landscaped section of a freeway."

Section 13-1006 provides three exceptions to section 13-1002 stating in pertinent part:

"The provisions of *this article* shall not apply to any of the following:

"*.* . . . . . . . . . . . . . . . . . . . . . . . .

"(3) *Signs which advertise the business conducted or goods manufactured, produced, or sold, or services rendered, on the property upon which such advertising display is placed.*" (Italics added.)

Distilling the numerous ordinances cited above, it can be seen that advertising signs in commercial districts are permitted *so long* as permit procedures are followed and the proposed sign is found to be consistent with the intent and provisions of article 9 which includes compatibility with property adjacent to landscaped freeways.

Appellants do not dispute the proposed signs are "advertising displays" and that Freeway 41 is a "landscaped freeway" as those terms are used in section 13-1002. They correctly assert the proposed signs are otherwise within the exception under subdivision (3) of section 13-1006 to the complete ban of advertising displays adjacent to a landscaped freeway.

■ Appellants contend that because they applied for permits to erect signs adjacent to a landscaped freeway designating the type of automobiles sold and serviced at the premises, section 13-1006, subdivision (3) as the specific statute preempts application of the general statute of section 13-902.

■ Appellants rely on the principle that where a general statute conflicts with a special statute, the special statute will be considered an exception to the general statute. However, the special statute will work as a repeal by implication only where it is in direct conflict with the general statute, repealing the general statute only to the extent the two statutes are irreconcilable. Repeals by implication are not favored; they will be recognized only where there is no rational basis for harmonizing potentially conflicting statutes. The presumption is against repeal by implication where express terms are not used and the statutes are not irreconcilable. (*Van de Kamp* v. *Bank of America* (1988) 204 Cal.App.3d 819, 838 [251 Cal.Rptr. 530].)

Appellants argue the Director had a ministerial duty to issue their permits in that the requested permits were within the applicable zoning regulations and fell within the exception to a complete ban on advertising signs along landscaped freeways. ■ Where a statute requires an officer to do a prescribed act upon a prescribed contingency, his functions are ministerial. Where a statute or ordinance clearly defines the specific duties or course of conduct that a governing body must take, that course of conduct becomes

mandatory and eliminates any element of discretion. (*Great Western Sav. & Loan Assn.* v. *City of Los Angeles* (1973) 31 Cal.App.3d 403, 413 [107 Cal.Rptr. 359].)

▬ In determining whether section 13-902 conflicts with section 13-1006, subdivision (3), we begin with the fundamental rule that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, the court turns first to the words themselves for the answer. We are required to give effect to statutes according to the usual, ordinary import of the language employed in framing them. Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

▬ It is upon this analysis that appellants' contention fails. It is clear that the enumerated ordinances set forth above are not to be read independently of each other. The most general ordinance applicable to our situation, section 12.222.5-K, incorporates section 12-306-K by reference. Section 12-306-K provides for erection of advertising signs and is expressly made *subject to* articles 9 and 10 of chapter 13.

Section 13-907 states, in pertinent part, that a sign permit shall not be approved unless it is found to be "consistent with the intent and provisions *of this article.*" (Italics added.) Section 13-902 of the *same* article sets forth the intent of the legislature (Fresno City Council) which is to promote and protect the public health, safety and welfare by regulating existing and *proposed signs of all types* within the city to assure, among other things, that they are "Compatible with their surroundings."[3]

Section 13-1002 refers to signboards on property adjacent to landscaped freeways and generally prohibits advertising displays which are designed to be viewed primarily by persons traveling thereon.

Section 13-1006, subdivision (3) creates an exception to "this article" (art. 10) for "Signs which advertise the business conducted . . . on the property upon which such advertising display is placed." Section 13-1006, subdivision (3) is not made an exception to article 9.

Contrary to appellants' argument, section 13-1006 does not state that all forms of advertising displays alongside freeways must be permitted if any of

---

[3]We agree with the lower court in its interpretation of the phrase "Compatible with their surroundings" as referring to aesthetics.

the three conditions applies. But rather, it merely prohibits a blanket ban on advertising displays alongside landscaped freeways. Furthermore, section 13-1006, subdivision (3) does not address whether such signs are allowed to face Freeway 41.

Appellants argue that section 13-1006, subdivision (3) is independent of section 13-902 and by logical extension, independent of the entire section 13-900 series. Within the 13-900 series is the entire regulatory scheme dealing with the permitting process (§§ 13-906 to 13-907), prohibited signs (§ 13-913), position of signs (§ 13-914), electric work, maintenance and repair (§§ 13-916, 13-917), et cetera. Nowhere in the section 13-1000 series is there any reference to size, position, responsibilities of maintenance and repair or other indicia of regulation normally perceived to be part of the city's regulatory power. (Cf. Bus. & Prof. Code, § 5226; *Metromedia, Inc.* v. *San Diego* (1981) 453 U.S. 490, 507-508 [69 L.Ed.2d 800, 814-815, 101 S.Ct. 2882].)

■ "It is well established that statutes must be given reasonable construction that conforms to the apparent purpose and intention of the law makers . . . ." (*Nunn* v. *State of California* (1984) 35 Cal.3d 616, 624 [200 Cal.Rptr. 440, 677 P.2d 846].) ■ We cannot reasonably conclude that it was the intention of the drafters of section 13-1000 et seq. to authorize the erection of signs adjacent to a landscaped freeway so long as the signs were of the business conducted and placed on the same property, *without any other restrictions* regarding size, other physical attributes, et cetera.

From this discussion, we find that articles 9 and 10 are complementary rather than conflicting and that the city council in this case intended to permit certain advertising displays to be located alongside freeways so long as they are in conformity with section 13-902. Therefore, the Director was not under a ministerial duty to approve the sign application.

Appellants contend that even if there were no ministerial duty to issue the sign permits, the Director abused his discretion in denying the permits by applying arbitrary standards. We note that mandamus cannot be used to control the discretion of an administrative officer or agency. The writ will not issue to compel the doing of an act in a particular manner. A court may not substitute its discretion for the discretion properly vested in the administrative agency. (*Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 315 [144 P.2d 4].) Here, the Director was vested with the discretion to determine whether the signs requested would have been compatible with their surroundings. Subject to our discussion of other issues herein, we are legally constrained from ruling otherwise.

## II.

*Is section 13-902, subdivision (b) an unconstitutional
delegation of authority?*

■ Next, appellants contend there was an unconstitutional delegation
of authority by allowing the Director to determine compatibility with
surroundings.

■ "An unconstitutional delegation of authority occurs only when a
legislative body (1) leaves the resolution of fundamental policy issues to
others or (2) fails to provide adequate direction for the implementation of
that policy." (*Carson Mobilehome Park Owners' Assn.* v. *City of Carson*
(1983) 35 Cal.3d 184, 190 [197 Cal.Rptr. 284, 672 P.2d 1297] [hereinafter
*Carson*].)

Appellants do not dispute the Director's characterization of section 13-902
as part of the City of Fresno's zoning ordinance. Under Government Code
section 65850, subdivision (b), the City of Fresno may adopt ordinances
regulating signs and billboards.

■ They argue the delegation of authority was "unlawful" because the
council provided no guidelines on how to determine compatibility. Appel-
lants also contend that section 13-902, subdivision (b) is invalid because the
*Director* has made the fundamental policy decision of banning all freestand-
ing signs along Freeway 41. They charge that, under *Carson, supra,* 35
Cal.3d 184, only the *council* has the authority to make that determination.

On the latter point, appellants are incorrect in their conclusion that the
Director was given the power to make the *policy* decision to ban such signs.

As noted previously, the council set forth the purpose of article 9 by
requiring compatibility with surroundings before a sign permit could be
approved in order to promote and protect the public health, safety and
welfare. Furthermore, the Director was specifically instructed *not* to approve
a sign permit application unless the proposed sign was consistent with the
intent and provisions of article 9. We have already determined that articles 9
and 10 are homologous in that they derive from the council's regulation of
all signs permitted within the City of Fresno. We conclude that the funda-
mental policy decision was, in fact, made by the council and the authority to
*implement* the policy was entrusted to the Director.

Since we note that *Carson, supra,* 35 Cal.3d 184, sets forth the elements of
an unconstitutional delegation of authority in the disjunctive, rather than the

conjunctive, we must now determine whether the actions of the Director are invalid because there was inadequate direction for the implementation of the policy on signs.

The stated purpose of the sign ordinance is to promote "public health, safety and welfare" by regulating advertising signs in terms of legibility, compatibility with surroundings, appropriateness to the activity they depict, expressiveness of the individual or community identity and manner of construction and repair.

At the hearing on the petition for writ of mandate, David Herb, the development manager for the City of Fresno, testified as follows:

"Q.   Okay. What guidelines do you use in reviewing sign applications in regard to compatibility?

"A.   What guideline? What we use, as I indicated in an earlier response, it is quite obvious that when you get into a reading the preamble of Article 9 that you're getting into subjective judgments that are based on professional experience and common sense."

As a general rule of zoning law, broad standards for conditional use permits have been upheld because it is impossible and undesirable to devise specific standards to cover all conceivable variations of circumstances involving individual properties. The approach is not the same when the property owner has independent rights which constitute a limitation upon the powers of the legislative body itself to regulate the matter. When zoning restrictions operate on a property owner's exercise of First Amendment rights, the courts have required greater legislative specificity to avoid undue administrative discretion impinging on the owner's rights. (*Hunter* v. *City of Whittier* (1989) 209 Cal.App.3d 588, 597 [257 Cal.Rptr. 559].)

In *Hunter*, the appellate court struck down a Whittier city ordinance which required a conditional use permit before a satellite dish could be installed by a homeowner. Among other prerequisites to receiving a permit, the property holder was compelled to show that *the proposed use would be compatible with the permitted uses of surrounding and adjacent properties.* (209 Cal.App.3d at p. 595.) The court found that the ordinance provided no meaningful legislative standard for the zoning administrator to determine placement and no recognition of the owner's right to receive signals as a factor to be evaluated. (*Id.* at p. 599.)

However, *Hunter* was addressing a specific Federal Communications Commission (FCC) regulation which preempted all local regulations inconsistent with its provisions. The FCC regulation required any local regulations

limiting satellite dishes to contain reasonable and clearly defined objectives. The FCC imposed a limitation on local regulators which may have required greater specificity than would otherwise have been sufficient under local zoning laws. (209 Cal.App.3d at p. 597.)

Although *Hunter* is distinguishable on that basis, it is still apparent that in any situation where First Amendment rights may be infringed, great caution is undertaken to ensure that administrative officials are not given unbridled power to prohibit protected First Amendment rights. (*People* v. *Fogelson* (1978) 21 Cal.3d 158, 167 [145 Cal.Rptr. 542, 577 P.2d 677] [case involving a member of the Hare Krishna faith passing out literature without a permit].)

Here, however, it can be argued that we are not dealing with a First Amendment right *insofar as the narrow issue of whether the lack of standards renders the ordinance infirm.* There is no contention here by appellants nor is there any indication in the record that the content of the freestanding signs played any part in the permitting process and ultimate denial. "[T]here is no claim in this case that [Fresno] has as an ulterior motive the suppression of speech, . . ." (*Metromedia, Inc.* v. *San Diego, supra,* 453 U.S. 490, 510 [69 L.Ed.2d 800, 817].)

Therefore, what may otherwise be seen as an issue fraught with First Amendment ramifications is, *under the circumstances,* to be resolved using well-settled rules governing sufficiency of standards.

"[A] substantial amount of vagueness is permitted in California zoning ordinances: '[I]n California, the most general zoning standards are usually deemed sufficient. "The standard is sufficient if the administrative body is required to make its decision in accord with the general health, safety, and welfare standard." [Citation.] . . . "California courts permit vague standards because they are sensitive to the need of government in large urban areas to delegate broad discretionary power to administrative bodies if the community's zoning business is to be done without paralyzing the legislative process." [Citation.]' [Citation.]" (*Novi* v. *City of Pacifica* (1985) 169 Cal.App.3d 678, 682 [215 Cal.Rptr. 439].)

That the ordinance does not articulate a formula for determining compatibility does not make it unconstitutional. Standards sufficient for administrative application of a statute can be implied by the statutory purpose. (*Carson, supra,* 35 Cal.3d at pp. 190-191.)

As we noted above, the council directed the promotion of the "public . . . welfare" by sign regulation using compatibility, among other considerations.

This, in itself, can be construed as a guideline (to the promotion of public welfare).

We cannot conclude that merely because there are no expressed "metes and bounds" delineating what is or what is not compatible, the ordinance is rendered infirm. ■■■ While the legislative body cannot delegate its power to make a law, it can delegate a power to determine some fact or state of things which the law is designed to address. (*Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 376 [71 Cal.Rptr. 687, 445 P.2d 303].)

■■■ Furthermore, it would be difficult at best to articulate standards for such an abstract concept as aesthetics. By its nature, aesthetics is a vague term and any interpretation would be somewhat subjective. As noted in *Metromedia, Inc.* v. *San Diego, supra,* 453 U.S. at page 510 [69 L.Ed.2d at pp. 816-817], the United States Supreme Court recognized that in the advancement of the city's aesthetic interests, "[s]uch esthetic judgments are necessarily subjective, defying objective evaluation, and for that reason must be carefully scrutinized to determine if they are only a public rationalization of an impermissible purpose." We do not find, *in a situation such as this,* that reposing in the Director the authority to determine compatibility is unreasonable, particularly when the apparent purpose is to prevent visual blight and clutter on a landscaped freeway.

Finally, it has been held by several courts that a general welfare standard is a sufficient guideline to enable an agency to act constitutionally. (*Mitcheltree* v. *City of Los Angeles* (1971) 17 Cal.App.3d 791, 797 [95 Cal.Rptr. 76]; *Groch* v. *City of Berkeley* (1981) 118 Cal.App.3d 518, 525 [173 Cal.Rptr. 534]; *Van Sicklen* v. *Browne* (1971) 15 Cal.App.3d 122, 127 [92 Cal.Rptr. 786].)

" 'California courts permit vague standards because they are sensitive to the need of government in large urban areas to delegate broad discretionary power to administrative bodies if the community's zoning business is to be done without paralyzing the legislative process.' [Citation.]" (*People* v. *Gates* (1974) 41 Cal.App.3d 590, 595 [116 Cal.Rptr. 172].)

In *Southern Pac. Co.* v. *City of Los Angeles* (1966) 242 Cal.App.2d 38, 41 [51 Cal.Rptr. 197], Southern Pacific Company appealed the denial of a writ seeking to compel the issuance of a building permit in Los Angeles. The permit had been denied because of a refusal to dedicate a portion of the property to the city for street widening purposes. One of the issues on appeal was the contention that the ordinance involved was unconstitutional for vagueness because insufficient standards were prescribed to guide the administrative officer charged with its enforcement. (*Id.* at p. 51.) On this issue, the appellate court held:

"The present ordinance calls for an awareness by the administrative officers of 'practical difficulties' and the avoidance of 'unnecessary hardship' in the consideration of a variance from the dedication requirement. While this may call for 'judgment of a high order,' such guidelines are not so vague as to be constitutionally objectionable." (242 Cal.App.2d at p. 51.) Section 13-902, subdivision (b) is not an unconstitutional delegation of authority.

### III.

*Does the ordinance unconstitutionally abridge First Amendment rights?*

Finally, appellants contend that the denial of their applications for sign permits was an unconstitutional abridgement of their First Amendment right of free speech. ▪▪ Before addressing this issue, we must first determine whether it was raised in the trial court. The Director contends that it was not, therefore precluding us from reviewing the issue on appeal. Generally, "a party to an action may not, for the first time on appeal, change the theory of the course of action. [Citations.] There are exceptions but the general rule is especially true when the theory newly presented involves controverted questions of fact or mixed questions of law and fact." (*Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 340-341 [303 P.2d 738].)

The Director argues that controverted facts attendant to the "new theory" were not presented to the trial court, specifically, whether the action he took imposed a complete ban on outdoor advertising.

A review of the record reveals that while the First Amendment was not addressed in the memoranda of points and authorities submitted to the trial court, it was asserted in oral argument at the hearing in the trial court. Therefore, we will resolve the First Amendment issue on its merits.

▪▪ Initially, we note that any law regulating or restricting the exercise of First Amendment rights must survive "exacting scrutiny" (*First National Bank of Boston* v. *Bellotti* (1978) 435 U.S. 765, 786 [55 L.Ed.2d 707, 724, 98 S.Ct. 1407]) and it must further a substantial government interest. (*United States* v. *O'Brien* (1968) 391 U.S. 367, 376 [20 L.Ed.2d 672, 679-680, 88 S.Ct. 1673].)

"Nevertheless, our decisions have recognized 'the "commonsense" distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech.'" (*Central Hudson Gas & Elec.* v. *Public Serv. Comm'n* (1980)

447 U.S. 557, 562 [65 L.Ed.2d 341, 348, 100 S.Ct. 2343].) The Constitution therefore accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation. (*Id.* at p. 563 [65 L.Ed.2d at p. 348].)

■ Signs and billboards provide a forum for the expression of ideas. Any governmental regulation or prohibition thereof bears scrutiny under the First Amendment. (*City and County of San Francisco* v. *Eller Outdoor Advertising* (1987) 192 Cal.App.3d 643, 656 [237 Cal.Rptr. 815].) When outdoor sign regulations are challenged as impermissible restraints on free speech, the approach taken in virtually every case by the courts is to " 'strike the proper balance between the right of free expression and legitimate governmental interests.' " (*Id.* at p. 657.)

The Director predicated his denial of the sign permits upon the basis that the placement of multiple freestanding signs along Freeway 41 frontage would be "aesthetically offensive."

■ There is no doubt that what the City of Fresno is attempting to accomplish by regulating signs is a legitimate governmental interest. "[I]t is . . . well recognized that outdoor signs, because of their intrusive nature, may properly be subjected to governmental regulation to promote aesthetics and traffic safety." (*City and County of San Francisco* v. *Eller Outdoor Advertising, supra*, 192 Cal.App.3d at p. 656, citing *Metromedia, Inc.* v. *San Diego, supra*, 453 U.S. at pp. 502, 508-509 [69 L.Ed.2d at pp. 811-812, 815-816].) Aesthetic purposes alone can justify assertion of police power to ban billboards. (*Metromedia, Inc.* v. *City of San Diego* (1980) 26 Cal.3d 848, 860-861 [164 Cal.Rptr. 510, 610 P.2d 407], revd. on other grounds 453 U.S. 490 [69 L.Ed.2d 800, 101 S.Ct. 2882].)

While ordinances regulating billboards have often been the subject of litigation in California (see, e.g., *City and County of San Francisco* v. *Eller Outdoor Advertising, supra*, 192 Cal.App.3d at p. 656), we are presented for the first time the issue of whether a municipality can constitutionally restrict a property owner from erecting an onsite business sign oriented toward a landscaped freeway.

Appellants do not dispute the right of a municipality to reasonably regulate signs and billboards. Such regulation has long been held to be a valid exercise of the government's police power. (*Carlin* v. *City of Palm Springs* (1971) 14 Cal.App.3d 706, 712 [92 Cal.Rptr. 535].) However, they perceive

the ordinance and its implementation as "substantially limiting, if not eliminating, Appellants' ability to advertise effectively the products sold and services rendered on their business property through on-site advertising."

The Director responds that his actions do not constitute a ban of on-site sign advertising. He alludes to several freestanding signs already in place on appellants' property, some of which are directed toward Freeway 41, as well as wall signs which presently front on Freeway 41. David Herb, the development manager for the City of Fresno, testified at the hearing before the trial court that freestanding signs which face Blackstone and Bullard Avenues would be permitted. Furthermore, he testified that wall signs would be compatible with the surroundings and would also be approved. From this, we must conclude that the ordinance is not a ban on *all* on-site advertising.

In *Central Hudson Gas & Elec.* v. *Public Serv. Comm'n, supra,* 447 U.S. 557, 563-567 [65 L.Ed.2d 341, 348-352], the United States Supreme Court set forth a four-part test for determining the validity of government restrictions on commercial speech. (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest and (4) reaches no further than necessary to accomplish the given objective. (*Metromedia, Inc.* v. *San Diego, supra,* 453 U.S. 490, 507 [69 L.Ed.2d 800, 814-815].)

It is undisputed that the advertising signs sought are not misleading and concern lawful activity. We then can uphold the restriction only if we discern a substantial governmental interest advanced by the ordinance, which ordinance goes no further than necessary to effect the governmental interest.

It has been long recognized that cities have indisputable interests in beautifying vital areas by limiting visual blight caused by advertising billboards. (See, e.g., *City and County of San Francisco* v. *Eller Outdoor Advertising, supra,* 192 Cal.App.3d 643, 659.) We can easily perceive the same substantial governmental interest in prohibiting for aesthetic reasons freestanding advertising signs which are oriented toward a landscaped highway.

Appellants argue that there was no evidence presented at the hearing in the trial court that the signs requested would be "particularly obtrusive or unsightly," rather, merely that all signs visible from the freeway, both onsite and offsite, were characterized as visual blight. Therefore, the Director failed to establish that the ordinance advances aesthetic interests.

This argument is disingenuous. By characterizing signs along Freeway 41 as visual blight and then taking measures to limit or prohibit such signs, the city council took steps to advance the governmental interest of controlling that visual blight. Numerous cases have noted that "It is not speculative to recognize that billboards by their very nature, wherever located and however constructed, can be perceived as an 'esthetic harm.' " (*Metromedia, Inc.* v. *San Diego, supra*, 453 U.S. at p. 510 [69 L.Ed.2d at p. 816] and cases cited in fn. 15 therein.)

We next conclude that the ordinance reaches no further than necessary to accomplish the city's objective.

Because freestanding signs are designed to stand out and apart from their surroundings, billboards create a unique set of problems for the land-use planner. (453 U.S. at p. 502 [69 L.Ed.2d at pp. 811-812].) Fresno has not banned all on-site billboards; it has not banned nonfreestanding or wall signs oriented toward Freeway 41; it has not banned advertising signs oriented in directions other than toward Freeway 41. The only type of sign advertising disallowed is that which can be reasonably construed as contributing to visual blight, that is, *freestanding advertising signs oriented toward Freeway 41*.

Appellants contend that because we are dealing with *on-site* rather than *off-site* signs, other factors come into play, such as the right to conduct and advertise business on the premises.

We are cited to discussion within *Metromedia, Inc.* v. *San Diego, supra*, 453 U.S. 490, *Central Hudson Gas & Elec.* v. *Public Serv. Comm'n, supra*, 447 U.S. 557, *City Council* v. *Taxpayers for Vincent* (1984) 466 U.S. 789 [80 L.Ed.2d 772, 104 S.Ct. 2118] and *City and County of San Francisco* v. *Eller Outdoor Advertising, supra*, 192 Cal.App.3d 643, contrasting restriction of *off-site* and *on-site* advertising. Appellant misinterprets the significance of the discussion within the cases cited. In none of the cases was there a restriction upon on-site advertising which restriction was then challenged. Therefore, none of the cases held on that issue. For example, in *Metromedia* the court simply noted that no on-site ban was enacted, which established that the city went no further than necessary to meet its purpose (traffic hazards and aesthetics). (453 U.S. at p. 508 [69 L.Ed.2d at p. 815].)

In *City Council* v. *Taxpayers for Vincent, supra*, 466 U.S. 789, the ordinance in question did not ban signs on private property, but only on public property. The court noted this disparate treatment facilitated their holding that the ordinance was constitutional because of the widespread availability

of alternative channels of communication. (*Id.* at pp. 811-815 [80 L.Ed.2d at pp. 791-793].)

In *City of Indio* v. *Arroyo* (1983) 143 Cal.App.3d 151 [191 Cal.Rptr. 565], a city ordinance required issuance of advance permits to erect, alter or relocate signs except as provided under certain circumstances. The city planning director was vested with wide discretion in issuing permits. To obtain approval, compliance with enumerated standards was required and the sign's relationship to the overall appearance to the subject property and the surrounding community was to be considered.

The Arroyos had a mural painted on the location of a small convenience store depicting aspects of their Mexican heritage. The Arroyos were notified that the mural was in violation of the sign ordinance. Upon being told to remove the mural, the Arroyos refused, thereby causing the planning director to seek a court order to remove the mural. (143 Cal.App.3d at p. 156.)

The Court of Appeal found the ordinance to be overbroad and unconstitutional in its application to the *noncommercial* mural. The court stated that governmental interest in furthering the city's aesthetic environment was unquestionably a proper interest. However, the purpose of Indio's sign ordinance was not served by its application to noncommercial wall murals. (143 Cal.App.3d at p. 159.) In dicta, the court recognized,

"The city's interest in its esthetic environment is directly advanced by the ordinance's regulation of commercial speech. We have little doubt that if, for example, the Arroyos' wall advertised 'COLD BEER, COME INSIDE!' it could properly be regulated in the precise fashion contemplated with regard to the mural as it exists." (*City of Indio* v. *Arroyo, supra,* 143 Cal.App.3d at p. 158.)

In *Bohannan* v. *City of San Diego* (1973) 30 Cal.App.3d 416 [106 Cal.Rptr. 333], certain property owners challenged an ordinance which regulated the placement of signs within an area surrounding "Old Town," a state park, contending that regulation of their signs' size, location, content and composition deprived them of their right to advertise. The court held that the ordinance did not deprive the owners of the right to use signs; instead, it regulated and restricted that use for proper purposes, the preservation of a historical atmosphere. (*Id.* at p. 423.) The owners' "contention the ordinance violates free speech concepts . . . apparently refers to the limitations placed on the design, size, content and *location* of signs permitted in the area. The limitations in question do not constitute a denial of the right to advertise as a concomitant of the constitutional guarantee of freedom of speech, but is a permissible regulation in the exercise of the police power [citation]." (*Id.* at p. 426, italics added.)

The same is true here. We find no unconstitutional abridgement of appellants' right to free speech by the ordinance as passed and implemented.

### DISPOSITION

The judgment is affirmed. Costs are awarded to respondent.

Stone (W. A.), Acting P. J., and Brown (G. A.), J.,* concurred.

Respondent's petition for review by the Supreme Court was denied February 26, 1992.

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.