Filed 3/24/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| TRACT NO. 7260 ASSOCIATION, INC., | B271111 |
| Defendant and Appellant, | (Los Angeles County Super. Ct. No. BS155027) |
| v. | |
| DON PARKER, | |
| Plaintiff and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  James C. Chalfant, Judge.  Affirmed in part and reversed in part.

Wheeler & Associates and David C. Wheeler for Defendant and Appellant.

Wilson Keadjian Browndorf, Marc Y Lazo and Charles K. Stec for Plaintiff and Appellant.

_____

A member of a nonprofit mutual benefit corporation requested inspection of the corporation's membership list, and other books and records. The corporation refused, and the member brought a petition for writ of mandate to compel inspection. The trial court agreed with the corporation that the member sought the inspection for an improper purpose, unrelated to his interest as a member of the corporation. As a result, the court denied the petition with respect to the books and records. However, the court concluded the corporation did not timely challenge the request for the membership list as required by statute, and therefore ordered the list disclosed. Both parties appeal. We conclude: (1) substantial evidence supports the trial court's finding that the member sought the information for an improper purpose; and (2) the corporation's challenge to disclosing the membership list was not barred by statute. We therefore reverse that part of the court's judgment requiring disclosure of the membership list, and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Don Parker is a member of Tract No. 7260 Association, Inc., a nonprofit homeowner's association (the "HOA"). This action arises out of his request for inspection of the HOA's membership list and other records. As far as the HOA is concerned, though, the action also arises out of a dispute the HOA has with another entity known as Fix the City.

2

Parker used to be the treasurer of the HOA. When Parker was treasurer, a man named Michael Eveloff was the President. Eveloff created Fix the City. According to the HOA, it had been granted the right to control a substantial amount of money. However, Eveloff convinced the HOA board to transfer that money to Fix the City, which used it for purposes which were of no use to the HOA. The HOA is now suing Fix the City for usurping its corporate opportunity. The HOA believes that Parker is aligned with Eveloff and Fix the City, and that he sought access to the membership list and other HOA records to use them against the HOA in the dispute with Fix the City.

A. *Parker's Request*

On January 29, 2015, the same day that the HOA filed suit against Fix the City (the "HOA/Fix the City" action), Parker requested seven categories of corporate information from the HOA, including its membership list. He stated legitimate reasons for which he sought the information. For example, he stated that he wanted to inspect the HOA's books to make certain the HOA was following generally accepted accounting principles. He explained that he sought the membership list for possible communications with the members to ascertain whether there have been corporate misdeeds.

Parker sought the information under Corporations Code sections 8330 et seq.[1]  Requests under those sections may be made by "[a]ny member" of the corporation (§ 8330, subd. (b)(1)) or by the "authorized number of members" (§ 8330, subd. (b)(2)). When the corporation has less than 1000 voting members, the "authorized number" is five percent of voting power.  (§ 5036.)  As we shall discuss, different procedures apply depending on whether a single member, or the authorized number of members, is making the request.  Parker made his request as "the undersigned member," and signed it as "Homeowner – Tract 7260."  He did not state that he was acting for the authorized number of members, nor did he suggest that he had written authorizations from members holding sufficient voting power.

B.     *The HOA Largely Denies the Request*

There is no serious dispute that the HOA did not fully comply with Parker's request.  A representative of the HOA met with Parker briefly and let him review certain of the documents he had sought – but not all of them, and not the membership list.

C.     *Parker Files his Petition*

On April 6, 2015, Parker filed a petition for writ of mandate, seeking an order compelling the HOA to allow him to inspect and copy the membership list and the other books and

---

[1]     All undesignated statutory references are to the Corporations Code.

4

records he had sought.  As in his written request for inspection, Parker asserted he had a right to inspect "in his capacity as a member" of the HOA.  The HOA answered the petition, arguing that Parker has no right to inspect, because he sought the information for an improper purpose.

D.     *The HOA Fails to Have the Cases Related*

On May 27, 2015, the HOA filed a Notice of Related Case, in order to relate this case (Parker's writ petition) to the HOA/Fix the City action.   In its notice, the HOA argued that Parker was seeking inspection in this case in order to give Fix the City an unfair advantage in the HOA/Fix the City case.  Parker opposed relation on both procedural and substantive grounds.  On June 24, 2015, the court in the HOA/Fix the City case denied relation, stating that the writ petition must be decided in a writ and receivers department, and would not be moved to the civil department in which the HOA/Fix the City case was pending.

E.     *Briefing on the Writ Petition*

The briefing on the merits of the writ petition turned to the issue of Parker's reasons for seeking inspection of the membership list and other documents.  Parker filed a declaration stating that he sought the information for legitimate reasons reasonably related to his interests as a member.  He expressly represented that he did not make his demand "for any reason

5

related to the other lawsuit subsequently filed by [the HOA] after I made the Demand."

The HOA presented evidence as to why it believed Parker was, in fact, aligned with Fix the City, and seeking the inspection in order to improperly assist Fix the City in the HOA/Fix the City action. This included evidence of the following facts: (1) Parker had been aligned with Eveloff in convincing the HOA to transfer the corporate opportunity to Fix the City, which the HOA alleges Parker accomplished by misrepresentation; (2) the HOA's then-lawyers gave the HOA an opinion that the transfer to Fix the City was lawful; (3) shortly after the transfer to Fix the City was approved by the HOA's board, Parker and Eveloff simultaneously resigned, effective April 7, 2013; (4) on April 5, 2013, the last business day prior to his resignation, Parker e-mailed the HOA's bank with an emergency request for a cashier's check for nearly $49,000 to the attorneys who had opined on the legality of the transfer; (5) the HOA's current treasurer can conceive of no "legitimate reason" why it would be in the HOA's interest to pay the attorneys with a cashier's check or to speed such a payment through as a treasurer's last official act; (6) that same law firm has since represented Fix the City in other cases (but not the HOA/Fix the City case); and (7) Parker's counsel in the current writ case is the same firm that is presently representing Fix the City in the HOA/Fix the City case.

6

In short, the HOA painted the picture of a treasurer who, by misrepresentations and aided by a possibly biased legal opinion, convinced the board to transfer an opportunity to Fix the City; then quit the board, making certain that the lawyers were paid off; and is now represented by the same firm that is defending Fix the City against the HOA's allegation that the transfer was improper.

F.      *The Trial Court Grants the Writ in Part*

The trial court recognized that the law requires a member seeking membership lists and other corporate records to have a purpose related to his interests as a member.  The court considered the facts and concluded that Parker's purpose was improper, stating, "Particularly since Parker approved the transfer to Fix the City and his lawyer is defending Fix the City in [the] lawsuit, a reasonable conclusion is that Parker is using his membership status to aid Fix the City in defending the [HOA/Fix the City] lawsuit."

Based on this factual finding, the court denied Parker's request for corporate books and records under section 8333.  However, the court concluded the membership list must be disclosed.  The court relied on section 8331, subdivision (i), which provides that, when a demand for membership lists is made by an *authorized number* of members, the corporation must seek an order setting aside the demand.  If it does not do so, the

7

requesting parties may seek mandamus and "[n]o inquiry may be made in such proceeding into the use for which the authorized number seek the list." As the HOA did not timely seek a set-aside order, the court concluded, the HOA's defense of improper purpose came too late insofar as the request involved the membership list.

G. *Further Proceedings*

Each party prepared a proposed judgment; each party objected to the other's proposed judgment. Specifically, the HOA believed the trial court had erred in relying on section 8331, subdivision (i) to allow Parker to access the membership list, as that provision applies only when the "authorized number" seeks a membership list, not when a single member does so. The HOA's counsel wrote Parker's counsel suggesting that the court relied on this statute due to Parker's counsel having misrepresented the law in this regard, and requesting that he inform the court of his error. Parker believed section 8331, subdivision (i) applied, and, in any event, it was too late for the HOA to raise the issue, as it would turn on the factual issue of whether Parker alone constituted the "authorized number" of members – an issue on which neither party had introduced evidence.

H.	*Judgment, Appeal, and Cross-Appeal*

The trial court signed a judgment consistent with its ruling, granting Parker access to the membership list only. Both parties timely appealed.

## DISCUSSION

On appeal, the HOA argues that the court erred in concluding the HOA was procedurally barred from challenging Parker's purpose in seeking the membership list and that, instead, the court's finding of Parker's improper purpose should bar him from inspecting the membership list as well as the other documents. In his cross-appeal, Parker argues that the evidence of improper purpose is insufficient as a matter of law, and his mere assertion of a single proper purpose is sufficient to justify inspection. Considering the cross-appeal first, we conclude the evidence is sufficient to support the trial court's finding of improper purpose, and that Parker's assertion of a proper purpose does not defeat this finding. Turning to the HOA's appeal, we conclude that the court erred in applying the "authorized number" law to Parker's single member request. Under the proper authority, the HOA timely raised the issue of Parker's improper purpose, and the court therefore should have also refused Parker's request to inspect the membership list.

A.     *Parker Sought the Information for an Improper Purpose*

A member's right of inspection is limited to purposes reasonably related to the member's interests as a member. (§§ 8330, subd. (b)(1) [membership lists], 8333 [corporate financial records].) "This limitation is always subject to judicial review to determine whether a lawful purpose exists." (*Dandini v. Superior Court* (1940) 38 Cal.App.2d 32, 35.) A corporation has the burden of proving that the member "will allow use of the information for purposes unrelated to the person's interest as a member." (*WorldMark, The Club v. Wyndham Resort Development Corp.* (2010) 187 Cal.App.4th 1017, 1029.) On appeal, we review the trial court's order for substantial evidence. (*Ibid.*) Mere speculation that the member will use the information for an improper purpose is not sufficient to nullify inspection rights; any suspicion must be based on adequate facts in order to justify denial of inspection. (*Gilmore v. Emsco Derrick & Equipment Co.* (1937) 22 Cal.App.2d 64, 67 [improper to deny shareholder inspection rights simply because she was employed by a detective agency, when there was no evidence her inspection demand was related to her employment].)

Here, Parker contends the court's finding of improper purpose is unsupported by the evidence, as it is mere suspicion based on the fact that Parker's counsel is currently representing Fix the City in "unrelated" litigation. In Parker's briefing, he

10

repeatedly characterizes the HOA/Fix the City case as "unrelated," because the judge in the HOA/Fix the City matter refused to relate the two cases. But the court's order declining to relate the cases was made on the procedural basis that a writ petition should remain in the writ department; it did not conclude that the two cases were factually unrelated. Indeed, they are factually related. The HOA/Fix the City litigation challenges a transfer which Parker himself recommended, allegedly by misrepresentations. That Parker is pursuing his inspection claim aided by the same counsel defending Fix the City in the HOA/Fix the City litigation certainly gives rise to the reasonable inference that Parker seeks the information to aid Fix the City in defending against that action. Parker argues that this cannot be the case, in that the HOA/Fix the City complaint was not filed until the day he served his inspection demand, and he did not learn of the complaint until it was served on Fix the City some weeks later. But this does not mean that Parker did not know that litigation was imminent, and does not undermine the conclusion that he sought inspection to defend Fix the City against the complaint that he knew was coming.

Moreover, the fact that Parker's counsel is representing Fix the City in the HOA/Fix the City litigation is not the only fact supporting the trial court's conclusion. That Parker and Eveloff simultaneously resigned from the board after pushing through

11

the transfer to Fix the City tends to show Parker is aligned with the HOA's litigation adversary. That Parker made certain that the HOA's former counsel, which now represents Fix the City in other matters, was paid by a cashier's check on an emergency basis confirms the conclusion. The court's finding that Parker's purpose was improper is supported by substantial evidence.

Parker also argues that, even if he did have a "secondary" improper purpose, the fact that he asserted a proper purpose, related to his interests as a member, is sufficient to justify his inspection demand. Parker's authority for this remarkable proposition is *Private Investors v. Homestake Mining Co.* (1936) 11 Cal.App.2d 488. That case does not support the argument. In *Homestake Mining*, the trial court overruled a corporation's demurrer to a shareholder's complaint seeking to enforce inspection rights, and, as the corporation had filed no answer, issued a writ. The corporation sought a writ of supersedeas to stay enforcement pending its appeal. The court, therefore, was tasked with determining whether the appeal presented a substantial or debatable question. (*Id.* at p. 496.) One of the corporation's arguments in its demurrer was that the shareholder's complaint did not *allege* that the purposes for which inspection was sought were reasonably related to the plaintiff's interests as a shareholder, although the reasons themselves had been alleged. The appellate court concluded the

12

corporation's argument was utterly meritless, in that two of the four reasons alleged by the plaintiff shareholder had been held, in another case, to be reasonably related to shareholders' interests. The court stated that any one of the four reasons would have been sufficient for the demand, and concluded, "the additional allegation that any one of these alleged purposes was 'reasonably' related to the shareholder's interest would have been but a conclusion of law." (*Id*. at p. 497.) In other words, the court held only that when a plaintiff alleges a purpose reasonably related to the plaintiff's interests as a shareholder, the plaintiff need not also allege the legal conclusion that the purpose was, in fact, reasonably related to the plaintiff's interests as a shareholder. The court did not hold that the mere allegation of a proper purpose is sufficient to require inspection when the court has found other, improper purposes are actually motivating the shareholder.[2]

As the court's finding that Parker's purpose was improper is supported by substantial evidence, and Parker's assertion of a proper purpose does not undermine the conclusion, the trial court did not err in denying Parker inspection of all books and records other than the membership list.

---

[2] Indeed, such a holding would entirely undermine the statutory limitation on inspection rights, as any member with an improper purpose would surely be capable of asserting a proper one.

13

B.      *Parker's Improper Purpose Defeats Inspection of the*
        *Membership List*

We now turn to the HOA's appeal, which requires a discussion of the procedures that apply when a single member, as opposed to an "authorized number" of members, seeks inspection of a nonprofit corporation's membership list.  This is a legal issue of statutory interpretation, which we review de novo.  (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 502.)

Section 8330, subdivision (a) provides for a right of membership list inspection.  Subdivision (b) explains that this right applies to:  (1) any member; and (2) the authorized number of members.  Both can inspect only for a purpose reasonably related to their interest as members.  The statutes provide for different procedures, however, when the corporation believes inspection is sought for an improper purpose.

If a demand is made by a single member and the corporation believes the demand is for an improper purpose, the corporation "may deny the member access to the list.  In any subsequent action brought by the member [to enforce inspection], the court shall enforce the [inspection right] unless the corporation proves that the member will allow use of the information for purposes unrelated to the person's interest as a member . . . ."  (§ 8330, subd. (b)(1).)

In contrast, if the demand is made by the authorized number of members, and the corporation believes the demand is for an improper purpose, the corporation "may petition the superior court . . . for an order setting aside the demand." (§ 8331, subd. (a).)  The corporation has only 10 business days in which to file its petition; this may be extended to 30 days, upon a showing of excusable neglect.  (§ 8331, subds. (b) & (c).)  If the corporation does not act within that time limit, it "shall comply with the demand . . . ."  (§ 8331, subd. (e).)  Where the corporation has not timely sought an order setting aside the demand, the "requesting parties" may petition for mandate to compel the corporation to comply with the demand.  At the hearing, the court shall issue the writ unless it appears "that the demand was not made by an authorized number," the demand has been complied with, or a protective order is in effect.  "No inquiry may be made in such proceeding into the use for which the authorized number seek the list."  (§ 8331, subd. (i).)  By the express terms of section 8331, subdivision (i), these procedures apply only when the demand is made by the "authorized number" of members.

In short, when the demand is made by a single member, the burden is on that member to bring court action to enforce the right – although once the action is brought, the corporation has the burden of proving the member's purpose is improper.  But when the demand is made by the authorized number of members,

15

the corporation bears the burden of bringing court action, and must comply with the demand if it does not.

The two different procedures are intentional. The comments based on the Legislative Committee Summary to section 6330, which deals with public benefit nonprofit corporations and which contains language virtually identical to section 8330, explain that prior law allowed a single member to gain access to the membership list, but "a member had to bring suit to enforce this right if the corporation refused to provide the list." The new law adopts this law "as to the rights of a single member . . . ." (Coms. Based on Legis. Com. Summary, Deering's Ann. Corp. Code (2009 ed.) foll. § 6330, p. 209.) However, the new law provides that upon demand by the "authorized number," the corporation must provide the list, and if it fails to do so, the authorized number may enforce the right in a summary action. "The committee felt that the above provisions would draw a proper balance between a member's need for adequate access to membership lists and the need of a corporation to protect itself from wrongful exploitation of an important asset." (*Ibid.*)

Here, Parker sought inspection rights of the membership list as a single member. As such, the HOA was not required to seek court involvement, and when Parker brought suit, the HOA had the right to argue that Parker's purpose was improper. The court's reliance on section 8331, subdivision (i), to conclude that

16

the HOA was barred from relying on Parker's improper purpose, was error. As noted above, that subdivision's provisions apply only when the inspection demand is made by an authorized number of members, not a single member. When Parker sought writ relief, the HOA timely invoked Parker's improper purpose, and the court found the purpose to be improper. Inspection of the membership list should have been denied.

In passing, Parker suggests that courts have eliminated the distinction between requests by a "member" and requests by the "authorized number" of members, due to some language in *WorldMark, The Club v. Wyndham Resort Development Corp., supra,* 187 Cal.App.4th at page 1037. In that case, the inspection demand was made by a single member acting on behalf of the authorized number, and the corporation filed a petition under section 8331 to set aside the demand. (*Id.* at pp. 1025-1026.) On appeal, the corporation argued that although the member claimed he was acting on behalf of the authorized number of members, his paperwork did not properly establish that the other members had authorized him to act for them. The court responded that the membership list inspection rights "may be exercised either by a single member or by the authorized number of members. Thus, it was not necessary for [the member] to obtain authorizations from any other members in order to exercise his right of inspection and copying." (*Id.* at p. 1037.)

This was not a holding that the strict procedures applicable to a corporation refusing a membership list request by an authorized number also apply to a corporation refusing the same request by an individual member. Instead, the court was simply acknowledging the uncontroverted fact that a member alone may, in fact, request inspection of a membership list. The procedures for a corporation's challenge to such a request were not at issue.

Parker also argues that the HOA may not raise this error for the first time on appeal. He notes that he relied on section 8331, subdivision (i)'s limitations in his briefing in the trial court in support of his petition, and that the HOA did not argue that this subdivision applied only to demands by the authorized number until after the trial court had relied on it to rule in Parker's favor. Parker argues that it is too late to raise the issue now, when neither party has produced evidence as to whether Parker himself constituted the "authorized number" – that is, if the HOA was so small that Parker alone had a five percent voting share.

" 'The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant. [Citation.]' [Citations.] 'Application of the doctrine may often be

18

justified on principles of estoppel or waiver.' [Citation.]" (*Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 879.) Whether "the rule is to be applied is largely a question of an appellate court's discretion. [Citation.]" (*Ibid.*) It is generally unfair to allow a party to raise a new theory which contemplates a factual situation not put at issue below. (*Ibid.*)

Here, we exercise our discretion to allow the HOA to raise on appeal the issue of whether a corporation must seek court relief against a single member's improper membership list request or forever be barred from challenging the member's purposes. This is a purely legal issue which raises no new facts. Moreover, public policy interests suggest we intervene to protect the innocent HOA members whose privacy rights are implicated.

On the contrary, it is Parker whose new argument raises factual issues. That is, Parker pursued his request, and his petition, solely on the theory that he was seeking the membership list as a single member. It was only when the HOA suggested that it was not barred from challenging Parker's purpose that Parker raised the new legal theory that he, in fact, constituted the authorized number of members all by himself. He had not sought the membership list as the authorized number of members, and had not pursued writ relief on that basis. He cannot for the first time on appeal change his factual theory, and argue that he sought the list as the authorized number, when he

never gave the HOA notice that he made his request in anything other than "his capacity as a member."

## DISPOSITION

That part of the court's judgment requiring disclosure of the HOA's membership list is reversed. The remainder of the judgment, denying inspection of all other documents due to Parker's improper purpose, is affirmed. Parker is to pay the HOA's costs on appeal.

SORTINO, J.*

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.