[Civ. No. 40992. First Dist., Div. Three. Nov. 28, 1978.]

JOHN W. WHISMAN, Plaintiff and Respondent, v.
SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al.,
Defendants and Appellants.

[Civ. No. 41424. First Dist., Div. Three. Nov. 28, 1978.]

ROBERT PERUSSINA, Plaintiff and Respondent, v.
SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al.,
Defendants and Appellants.

[Civ. No. 41425. First Dist., Div. Three. Nov. 28, 1978.]

ELFRIDA NOLAND, Plaintiff and Respondent, v.
SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al.,
Defendants and Appellants.

## COUNSEL

Breon, Galgani & Godino, Keith V. Breon, H. LeRoy Cannon, Martha B. Scott and Jon A. Hudak for Defendants and Appellants.

Jacobs, Blanckenburg, May & Colvin, Reynold H. Colvin and Robert D. Links for Plaintiffs and Respondents.

## OPINION

FEINBERG, J.—Appellant San Francisco Unified School District appeals from the judgment granting respondents' petition for a writ of mandate to compel appellant to reinstate respondents as supervisors AA.

Respondents are certified permanent employees of appellant. Respondent Whisman holds an elementary teaching credential and an elementary administration and supervision credential. He was hired by appellant in 1952 as a probationary elementary school teacher and became tenured as such in 1955. He was appointed an acting assistant principal in 1961 and an elementary school principal in 1968. In 1969, he was appointed to the position of supervisor AA/elementary division and allegedly became tenured as such in 1972 pursuant to section 5.101 of the Charter of the City and County of San Francisco.[1] Upon his return from sabbatical leave in 1975, Whisman was reassigned as an elementary school principal without a reduction in salary.

Respondent Perussina holds a secondary teaching credential, a counseling credential, a driver education and accident prevention credential and an administration and supervision credential. He was hired by appellant in 1949 as a teacher, acquired tenure as such in 1952, and served in that capacity until 1960. In 1961, he was appointed head of the driver training department of appellant. In 1968, he was appointed

---

[1]Hereafter referred to as Charter section 5.101.

supervisor AA/driver education and training and allegedly became tenured as such in 1971 pursuant to Charter section 5.101. In 1975, Perussina was reassigned as a high school assistant principal without a reduction in salary, but spends approximately half his time supervising the driver education program.

Respondent Noland holds an elementary teaching credential and an elementary administration and supervision credential. She was hired by appellant in 1947 as an elementary teacher and became tenured in that position in 1950. She was appointed an assistant principal in 1960, and an elementary school principal in 1965. In 1968, she was appointed to the position of supervisor AA/personnel services and allegedly became tenured as such in 1971 pursuant to Charter section 5.101. In 1975, Noland was reassigned as an elementary school principal without a reduction in salary.

All respondents were found to be senior in service to other supervisors who were retained in their supervisory capacities. Prior to their reassignment, all respondents were sent letters informing them of their potential reassignments. The letters stated that the action was considered because of reduction in services and not because respondents had failed to perform in a satisfactory manner. The letters informed respondents that they had a right to request a hearing. Each respondent requested a hearing, but none was granted by appellant.

Respondents individually filed complaints in October 1975, seeking, among other things, writs of mandate to compel appellants to reinstate respondents as supervisors AA. These individual actions were consolidated for trial due to the similarity of the claims. In August 1976, the trial court granted the writs, concluding, as a matter of law, that in making the reassignments, appellant had violated Charter section 5.101, section 44955 of the Education Code,[2] the due process clauses of the California and United States Constitutions, and the respondents' rights as permanent employees to be assigned duties equal in grade or rank to his or her permanent position. With respect to respondent Whisman, the trial court further concluded that his reassignment was in violation of section 44973 (concerning the reassignment of employees returning from sabbatical leave).

---

[2]Hereafter, all sections cited are to the Education Code unless otherwise noted.

The central question presented by this appeal is whether a school district may reassign its supervisory personnel to positions of lower grade and rank than the position of supervisor.

As respondents' position is dependent upon Charter section 5.101, the threshold issue in this appeal is whether Charter section 5.101 is valid.

Article XI, section 7 of the California Constitution provides that "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." The power of a city to enact its own ordinances and regulations is therefore "specifically limited to such [ordinances and regulations] as are 'not in conflict with general laws.'" (*Harbor Carriers, Inc.* v. *City of Sausalito* (1975) 46 Cal.App.3d 773, 775 [121 Cal.Rptr. 577].)

This rule with respect to conflict between general laws and city ordinances is tempered by article XI, section 5, subdivision (a) of the California Constitution: "It shall be competent in any city charter to provide that the city . . . may make and enforce all ordinances and regulations *in respect to municipal affairs,* subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws." (Italics added.) ▮ It is therefore clear that ordinances and regulations enacted by a city are "subject to and controlled by conflicting state legislative action unless the subject matter is a 'municipal affair' as those words are used in sections 6 and 8 [now section 5], article XI." (*People* v. *Willert* (1939) 37 Cal.App.2d Supp. 729, 734 [93 P.2d 872]; *Pacific Tel. & Tel. Co.* v. *City & County of San Francisco* (1961) 197 Cal.App.2d 133, 150 [17 Cal.Rptr. 687]; see *Simons* v. *City of Los Angeles* (1976) 63 Cal.App.3d 455, 468 [133 Cal.Rptr. 721]; *Gai* v. *City Council* (1976) 63 Cal.App.3d 381, 387 [133 Cal.Rptr. 753].)

▮ The school system has been held to be a matter of general concern rather than a municipal affair. (*Esberg* v. *Badaracco* (1927) 202 Cal. 110, 115-116 [259 P. 730]; *Butterworth* v. *Boyd* (1938) 12 Cal.2d 140, 152 [82 P.2d 434, 126 A.L.R. 838]; *Madsen* v. *Oakland Unified Sch. Dist.* (1975) 45 Cal.App.3d 574, 578 [119 Cal.Rptr. 531].) Charter provisions, ordinances and regulations relating to schools are therefore subject to preemption by conflicting general laws. It follows that no vested right can be acquired pursuant to such charter provisions, ordinances or regulations, for any rights so acquired, are acquired subject to state law.

Charter section 5.101 provides for the classification of school supervisors as permanent employees in the position of supervisors, provided that they were appointed to such position prior to July 1, 1971. All respondents were appointed as supervisors prior to July 1, 1971, and therefore contend that they were tenured as supervisors.

■ Section 44850.1 was added to the Education Code in 1977. This section presently provides that "on and after July 1, 1978, the certificated employees of any school district . . . who serve . . . in an administrative or supervisory position shall neither acquire *nor retain* permanent status in such position unless the employee is or becomes eligible for permanent status in accordance with provisions of this code." (Italics added.) The "provisions of this code" referred to in section 44850.1, are sections 44894 and 44895. Section 44895 provides that "A permanent employee . . . when advanced to an administrative or supervisory position requiring certification qualifications . . . *shall retain* his permanent classification as specified in Section 44894." (Italics added.) Section 44894, subdivision (b), provides that "If an employee is authorized to render service in more than one type of position for which certification qualifications are required . . . he shall . . . acquire permanent status as follows: (1) If he is authorized to render service as a classroom teacher, he shall acquire permanent status as a classroom teacher." Therefore, if a school supervisor is certified as both a teacher and a supervisor, (s)he may attain or retain permanent status only in his/her capacity as a teacher. (*Council of Directors and Supervisors* v. *Los Angeles Unified Sch. Dist.* (1973) 35 Cal.App.3d 147, 152 [110 Cal.Rptr. 624]; *Thompson* v. *Modesto City High School Distr.* (1977) 19 Cal.3d 620, 624-626 [139 Cal.Rptr. 603, 566 P.2d 237].)

Charter section 5.101 is clearly in conflict with the California statutes discussed above. It is of no consequence that section 44850.1 was enacted after the enactment of Charter section 5.101. (*People* v. *Willert, supra,* 37 Cal.App.2d Supp. at p. 733; *Nat. Milk etc. Assn.* v. *City etc. of S. F.* (1942) 20 Cal.2d 101, 108 [124 P.2d 25], vacated on other grounds at 317 U.S. 423 [87 L.Ed. 375, 63 S.Ct. 359], questioned on other grounds at 58 Cal.2d 109.) We shall return to this question, *infra.*

As Charter section 5.101 is preempted by state legislation, respondents do not have tenure as supervisors, but have tenure only as teachers.

■ The argument upon which respondents rely in urging that they suffered a denial of procedural due process in being reassigned without a

hearing depends upon whether they have a property interest in the positions which they lost. (See *Barthuli* v. *Board of Trustees* (1977) 19 Cal.3d 717, 722-723 [139 Cal.Rptr. 627, 566 P.2d 261].) Accordingly, respondents based their due process claims on their right to their supervisory positions under Charter section 5.101. Since it is concluded, for the reasons discussed, that respondents have no vested rights in their positions as supervisors, the procedural rights recognized in the cases cited by respondents are inapplicable.

It is true that the letters received by respondents stated that respondents had a right to a hearing. This statement was made immediately after appellant used section 44955 to justify the imminent reassignment. Section 44955, by cross reference to section 44949, does confer a right to a hearing, but this section applies only to dismissals, as will be discussed *infra.* Therefore the "right" to a hearing mentioned in the letters was included in the mistaken belief that section 44955 applied to reassignments. There was in fact no statutory right to a hearing and appellant could not have conferred such a right by its mention in the letters.

Respondents contend that, by virtue of Charter section 5.101, respondents had a vested right to remain in their supervisory positions. ■ The powers of a school district to reassign permanent employees are reviewed in *Thompson* v. *Modesto City High School Dist., supra,* 19 Cal.3d at pp. 623-624: "It is well established that school districts in the normal course of administration have broad powers to reassign their permanent employees to different positions, including positions involving a reduction in pay and prestige, subject only to two requirements: (1) reasonableness [citations] and (2) that the reassigned position be 'within the scope of the certificate under which tenure was acquired' [citation] or 'the work assigned is of a rank and grade equivalent to that by which the permanent status was acquired.' [Citations.] Thus, in order to determine the propriety of a reassignment it is necessary to ascertain 'the certificate under which tenure was acquired' or 'the rank and grade' at which permanent status was acquired." It has been determined that respondents acquired tenure or permanent status only in a teaching capacity. Having been reassigned to administrative positions, respondents' work duties are still of a rank and grade greater than that at which tenure was acquired. Therefore, the reassignment is subject only to the requirement of reasonableness. (See *Thompson, supra,* at p. 626.)

Respondents do not specifically contend that their reassignments were unreasonable. Nor does the record suggest that such a position would be

tenable. The reassignments were all to positions in which respondents were not only qualified but in which they had experience. The reassignments involved no decrease in salary. Respondents merely preferred the work and prestige of their former positions. Respondents do contend that the services they performed are now being performed by other persons, so that there has not been a true reduction of services as stated in the letters preceding the reassignments. Even if the reason for reassignment of a supervisor is inaccurate or incomplete, however, the reassignment itself is still valid under section 13314.7[3] and the appropriate remedy is to demand a new and accurate statement of reasons. (*Grant* v. *Adams* (1977) 69 Cal.App.3d 127, 138 [137 Cal.Rptr. 834].) Respondents not having requested another statement of reasons, the determination of this case need not await such a statement.

■ Respondents' and the trial court's reliance on section 44955 is misplaced. Section 44955 does not apply to reassignments, but only to dismissals. (*Thompson* v. *Modesto City High School Dist., supra,* 19 Cal.3d at pp. 626-628.)

Respondents' claim that they should have been retained as supervisors at the expense of other supervisors with less seniority of service is based on section 44955. However, respondents may not avail themselves of the seniority language in section 44955 due to the inapplicability of this section to reassignments.

■ Respondent Whisman's and the trial court's reliance on section 44973 is also misplaced. Section 44973 provides that "At the expiration of the leave of absence of the employee, he shall, unless he otherwise agrees, be reinstated in the position held by him at the time of the granting of the leave of absence." This section was construed in *Adelt* v. *Richmond Sch. Dist.* (1967) 250 Cal.App.2d 149, 151-153 [58 Cal.Rptr. 151]) as not giving the employee greater rights than (s)he would have had if (s)he had not taken a sabbatical leave. The "position" referred to in section 44973 is *"employment within the scope of the certificate under which tenure was acquired"* (*id.,* at p. 152) rather than a particular school, class or administrative assignment. Therefore, since respondent Whisman could have been reassigned to a position of principal had he not gone on leave,

---

[3]Education Code section 13314.7 (presently § 44896) at the time provided: "Whenever a person employed in an administrative or supervisory position requiring certification qualifications is transferred to a teaching position, the governing board of the school district shall give such employee, when requested by him, a written statement of the reasons for such transfer. . . ."

he may be reassigned upon return from leave subject to the same formalities required of a reassignment during the normal course of employment.

Our analysis has been based upon the premise that section 44850.1 is applicable to the present proceeding. Respondents point out that the trial court entered judgment in this case long before section 44850.1 became effective. Therefore, they advance several arguments why section 44850.1 should not be applied here.

*First:* If section 44850.1 is made applicable to these proceedings, it deprives them of property without due process of law. We have disposed of this contention, *ante,* in pointing out that respondents had no vested rights in their supervisorial jobs and, therefore, to reasonably reassign them to other positions did not deprive them of rights cognizable under due process.

*Second:* The case was tried at a time before section 44850.1 was enacted. As a consequence, the record in these cases was not made with an eye toward section 44850.1 and this court, therefore, should wait until such a record is made before ruling on the effect of the section. Respondents note that there may be as many as 100 individuals in administrative or supervisorial positions in the San Francisco Unified School District who may be affected should this court rule on section 44850.1.

In response, it appears to this court that a naked issue of law is presented for our determination, i.e., the effect of section 44850.1 upon Charter section 5.101. We do not perceive that any other factual record could change that determination as to these respondents. Further, counsel were asked by this court specifically to brief this question and they have done so. As to others in the school district who may be affected by our determination today should controversies arise as to other employees of the school district, resolution thereof can be left to another time and another court.

Finally, in this context, we point out that we are bound to apply the law as it is *now.* ■ *"[B]ecause of the suspension of the judgment by appeal, it is without finality; . . . to give it finality, the court of appeals must itself pronounce its judgment, and . . . in pronouncing its judgment it must be governed by the existing law.* Therefore, when it finds that by the existing law the previous law, under which alone validity could be given to the

judgment, has been repealed, the sole prop and foundation for support of the judgment has been removed, and of necessity it must be declared null and void." (Italics added.) (*People* v. *Bank of San Luis Obispo* (1910) 159 Cal. 65, 79-80 [112 P. 866]; see also *Napa State Hospital* v. *Flaherty* (1901) 134 Cal. 315, 317 [66 P. 322]; *Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160, 170; 4 Cal.Jur.3d, Appellate Review, § 10, p. 31.)

*Third:* Respondents assert that even if section 44850.1 is applicable, it would not dispose of this appeal because Charter section 5.101 provides that even if supervisors or administrators do not have permanent status, i.e., tenure, they have the right to renewable four-year contracts. Therefore, respondents urge us not to apply section 44850.1 in this case. Respondents' logic eludes us. But assuming that to be our failing, their position is untenable because their premise is wrong. Respondents did not plead any cause of action in their complaints in the court below based on a contract right under Charter section 5.101, nor were the consolidated cases tried on any such theory. On the contrary, the complaints alleged that each respondent here had tenure rights under Charter section 5.101, the cases were tried on that theory and, in fact, the trial court so held. ■ It is too late in the day to assert on appeal a cause of action neither pleaded nor tried in the trial court. It follows that we are of the view that section 44850.1 may not only apply to the case, it may dispose of it.

■ *Finally:* Respondents argue that even if section 44850.1 applies, it should not be given retroactive application, i.e., it should not apply to administrators or supervisors who had acquired tenure prior to July 1, 1978, the date provided in section 44850.1, after which such tenure could not be obtained.

Respondents correctly note that the rule is well established that statutes should not be given retroactive application unless the Legislature has clearly manifested such an intention. Respondents then direct our attention to *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167 [288 P.2d 862], as holding "squarely on point" that section 44850.1 should not be given retroactive application.

In *DiGenova,* at issue was section 13255 (presently renumbered section 44836). It provides in essence that school districts "shall not employ or retain in employment" persons who have been convicted of sex offenses.

DiGenova, on the effective date of section 13255, had tenure as a teacher. Subsequent to the effective date, the school board sought to discharge him on the ground that *before* the effective date of section 13255, he had been convicted of a sex offense or offenses. The Supreme Court held that "retain in employment" applied to those people who either had tenure on the effective date of section 13255 or acquired tenure after the effective date and *thereafter* were convicted of a sex offense. The section did *not* apply to DiGenova because the conviction or convictions had occurred *prior* to the effective date and DiGenova had tenure *on* the effective date. Thus, the language giving meaning to the phrase "or retain" did not clearly show an intent to make it apply retroactively to the situation posed by DiGenova.

We compare section 13255 with section 44850.1. Section 44850.1 says that on and after July 1, 1978, a school administrator or supervisor "shall neither acquire nor retain permanent status in such position."

If the statute was not intended to apply to those administrators or supervisors who had tenure as such on July 1, 1978, then the phrase "nor retain" is empty of any meaning; since no one can acquire such permanent status on and after July 1, 1978, there can be no class of people who could "retain" such a status. After all, one cannot "retain" that which one cannot "acquire" in the first instance.

The only people to whom the words "nor retain" can apply are those people who had permanent status as of July 1, 1978, and under section 44850.1, they cannot "retain" it. Thus, the language of section 44850.1, unlike the language of former section 13255, plainly and clearly indicates a legislative intent to make the section retroactive; in fact, the language employed can have no other significance.

We now make explicit what has been implicit, in our opinion, namely, that we have assumed that at the time, the trial court was correct in holding that under Charter section 5.101, respondents did acquire tenure rights. Appellant has contended on appeal that even prior to the enactment of section 44850.1, state law foreclosed the acquisition of tenure in administrative or supervisorial positions under Charter section 5.101. In view of our resolution of the case, it is not necessary to reach this question.

The judgment is reversed with instructions to enter judgment for appellant in accordance with the views expressed herein.

Scott, Acting P. J., and Jenkins, J.,* concurred.

A petition for a rehearing was denied December 28, 1978, and respondents' petition for a hearing by the Supreme Court was denied January 24, 1979.

---

*Assigned by the Chairperson of the Judicial Council.