*294 Opinion
MOSK, J.
INTRODUCTION
Plaintiff Alec Zubarau, an amateur or “ham” radio operator, brought an action against the City of Palmdale[1] challenging the City’s order to have him remove a tower antenna from his residential backyard and a roof-mounted antenna from his residential roof. He contends that the City’s ordinance regulating the height of antennae in a residential area is preempted by state and federal law and that the ordinance is unconstitutionally vague.
We hold that Zubarau has standing and that the issues are ripe. We further hold that the City’s order to remove the tower antenna is supported by substantial evidence and is in compliance with state and federal laws in that it does not constitute an undue interference with amateur radio communications permitted by state and federal law. But to the extent the ordinance purports to regulate radio frequency interference, such regulation is preempted by federal law. In addition, the challenged ordinance is unenforceable in part because of apparent inconsistent height limitations that render it unconstitutionally vague. We affirm the trial court’s denial of attorney fees to Zubarau on his first cause of action because he is no longer the successful party and remand the matter to the trial court for a determination of whether he is entitled to attorney fees on the remaining causes of action.
BACKGROUND
The City’s planning department issued single family minor modification (SFMM) 05-139 approving Zubarau’s application to construct at his home in Palmdale a 55-foot tower antenna for amateur radio communications. According to Zubarau, when not in use, the tower could be retracted to a height of 21 feet. The City’s building and safety department issued Zubarau permit No. B05-00722 to install the “antenna with metal cage.” Zubarau constructed the tower antenna, and the City issued its final approval.
The City received a complaint concerning an antenna attached to Zubarau’s roof. The City found a violation and informed Zubarau that he needed to obtain “planning approval” for the roof-mounted antenna. Zubarau complied with the City’s requirements, and the City issued SFMM 05-304 for the roof-mounted antenna. The roof-mounted antenna extended to a height of approximately 40 feet. The City then closed the matter instigated by the complaint.
*295 Over a year later, Zubarau installed, without any permit, a horizontal antenna array on the tower antenna. The City’s code enforcement division received complaints that Zubarau had several antennae in his rear yard, that he was adding more antennae, and that the antennae were interfering with “TV, radio, baby monitors, etc.”
As a result, code enforcement officers and a building and safety officer inspected Zubarau’s property. The officers determined that the ground-mounted tower antenna had been modified to include a horizontal antenna array that extended about three feet into the required 10-foot side yard. The officers noted that the tower antenna was a telescoping tower that could be raised to a height of about 55 feet and that the horizontal antenna array was located at the top of the antenna when fully extended, thus reaching a total height of 61 feet, nine inches. The code enforcement officer informed Zubarau that the permissible maximum height for the array was 30 feet.[2] Zubarau denied that the array had been raised to 65 feet. Thereafter, in March the officer visited the site seven times and found the array raised to a height of 65 feet.[3]
City staff met with Zubarau to discuss the installation of the antennae, the required setbacks, and interference with electronic equipment in the neighborhood. Zubarau stated that he believed he was in compliance with all federal, state, and local regulations with regard to the antennae and their operation.
Then, the residents in the neighborhood surrounding Zubarau’s property submitted a petition with 68 signatures requesting that the City revoke the approvals for Zubarau’s antennae, require the removal of the antennae, and amend the applicable zoning ordinance. The City notified Zubarau that the *296 City Planning Commission (Commission) would hold a hearing to consider modification or revocation of the zoning approvals under SFMM 05-139 (the tower antenna)[4] and SFMM 05-304 (the roof-mounted antenna). The notice informed Zubarau that the City had determined that the antennae permitted under SFMM’s 05-139 and 05-304 did not comply with the purpose and intent of vertical antennae as specified in City Zoning Ordinance section 95.03A, and that the antennae were not installed or being operated in compliance with City Zoning Ordinance section 95.03B.2.b and B.3. Pictures of the tower antenna and roof-mounted antenna are in the appendix to this opinion.
Zubarau submitted to the planning department a letter setting forth his position and attaching various documents concerning the accommodation of amateur radio communications. Zubarau’s neighbors submitted letters to the planning department objecting to the tower antenna. The neighbors’ letters asserted safety and aesthetic concerns, the possible diminution of property values, and electronic interference with their television reception and other electronic equipment.
The planning department issued a memorandum for the hearing recommending revocation of SFMM’s 05-139 and 05-304. At the hearing, ham radio operators testified about the community benefits of ham radio, including its service in emergencies. Zubarau testified that he knew he was not in compliance because his antenna encroached on the setback and that he was willing to move the tower antenna if necessary. Zubarau’s neighbors testified about their concerns over Zubarau’s antennae. One commissioner stated that he drove by Zubarau’s residence prior to the hearing, that there was a “fair breeze,” the horizontal array was twisting in the wind, and the public’s perception of their safety from the array was as important as their actual safety. He added that in his opinion the tower antenna was not aesthetically pleasing. Another commissioner stated that Zubarau had a right to enjoy his “hobby,” and Zubarau’s neighbors had a right to enjoy their properties.
The matter was continued to June 21, 2007, to allow the Commission’s staff to arrange a meeting between Zubarau and his neighbors to attempt to resolve the matter. The Commission ordered Zubarau to remove the horizontal array and “anything” that did not exist as of January until the Commission made a final determination.
*297 The Commission’s staff set up a meeting between Zubarau and his neighbors on May 8, 2007. In a memorandum to the Commission, a Commission staff member reported that it did not appear from the meeting that mutual resolution of the disputed issues was likely. Zubarau was reported to have agreed to contact the Federal Communications Commission (FCC) to inquire about its ability to test his radio operations to demonstrate that the operations were not interfering with electronic devices at neighboring properties. Because the Commission staff had not received any information from Zubarau, it recommended continuing the hearing to allow Zubarau additional time to forward any report or information.
Following two more continuances, the hearing took place. Zubarau did not submit any FCC test results to the Commission. According to Zubarau’s counsel, the FCC did not require testing. Zubarau’s counsel explained that if a person’s electronic equipment experienced interference, it was the fault of the equipment, and any complaint should be made to the equipment’s manufacturer.
After testimony concerning the benefits of amateur or ham radio and the deleterious effects of the antennae, the Commission adopted resolution No. PC-2007-025 revoking the zoning approvals for SFMM’s 05-139 and 05-304. The Commission found that the installation and operation of Zubarau’s antennae were inconsistent with the purpose and intent of the vertical antenna regulations in City Zoning Ordinance section 95.03A[5] because the antennae were not compatible with the surrounding neighborhood; the antennae greatly exceeded the height of all residential buildings and accessory structures in the area and created an adverse visual impact on the neighborhood, especially when the tower antenna was raised to its full height with the horizontal antenna array; the antennae posed a safety hazard because they could fall in high winds or during seismic activity; the horizontal antenna array extended about three feet into the required 10-foot side yard setback in violation of City Zoning Ordinance section 95.03B.2.b; based on “anecdotal evidence” from Zubarau’s neighbors, the operation of the antennae interfered with electrical equipment in the neighborhood in violation of City Zoning Ordinance section 95.03B.3; and the height of the active array on the antennae exceeded 30 feet in violation of the height restriction in section 95.03B.1 of the City Zoning Ordinance. Zubarau was ordered to cease and desist all operations and to remove all vertical antennae within 14 days.
*298 The city council (City Council) heard Zubarau’s appeal of the Commission’s decision. With respect to SFMM 05-139 (the tower antenna), the City Council made findings consistent with the Commission’s findings in resolution No. PC-2007-025 (revocations), but also made the additional finding that the horizontal antenna array was installed without the required approval of the planning or building and safety departments. The City Council made no findings with respect to SFMM 05-304 (the roof-mounted antenna). In resolution No. CC 2008-009, the City Council denied Zubarau’s appeal concerning the revocation of SFMM 05-139 (the tower antenna) and granted the appeal concerning the revocation of SFMM 05-304 (the roof-mounted antenna).
Zubarau filed in the trial court a verified petition for writ of mandate and declaratory relief. In his first cause of action, Zubarau sought a writ of mandate directing the City Council to grant his appeal and reinstate SFMM 05-139 and permit No. B05-00722 (tower antenna). In his second cause of action for a writ of mandate to strike portions of the zoning ordinance, he asserted that state and federal law preempted City Zoning Ordinance section 95.03B.1, which limits the height of the active element of an antenna array to a maximum height of 30 feet, and City Zoning Ordinance section 95.03B.3, which concerns the regulation of radio frequency interference. In his third cause of action, he sought a declaration that parts of City Zoning Ordinance section 95.03A and B[6] are unenforceable as vague. In this cause of action, Zubarau alleged that City Zoning Ordinance section 95.03 permitted a 75-foot vertical antenna, but limited the “active element” of an “antenna array” to a maximum height of 30 feet without defining “active element” or “antenna array.” “Active element” and “antenna array” may be interpreted in *299 different ways, Zubarau alleged, thus rendering the sections confusing, unintelligible, and subject to arbitrary enforcement.
At the hearing on Zubarau’s writ petition, the trial court asked Zubarau’s counsel to explain the scope of Zubarau’s requested relief as to his first cause of action. Zubarau’s counsel asserted that the petition for writ of mandate sought to reverse the City Council’s determination only as to the 55-foot vertical tower antenna. The cause of action did not concern the horizontal antenna array. The trial court issued Zubarau’s requested writ of mandate only with respect to the tower antenna and denied any relief requested by the other causes of action. The trial court’s minute order stated, in part, that the City Council’s administrative decision to eliminate the tower antenna completely was an abuse of discretion because it violated Government Code section 65850.3[7] and contained findings that were not supported by substantial evidence. The trial court’s judgment vacated the City Council’s resolution No. CC 2008-009, denied Zubarau’s second cause of action as moot, and denied the third cause of action without explanation.
Zubarau filed a motion for attorney fees pursuant to Code of Civil Procedure section 1021.5 and Government Code section 800. The trial court denied Zubarau’s motion pursuant to Code of Civil Procedure section 1021.5 because Zubarau failed to show that he had conferred a significant benefit on anyone other than himself. The trial court denied Zubarau’s motion pursuant to Government Code section 800 because Zubarau failed to show that his personal stake in the outcome of the case was disproportionate to the attorney fees that he incurred, that he actually incurred attorney fees, or that he was obligated to reimburse his attorneys if he recovered attorney fees.
DISCUSSION
I. Standing and Ripeness
The City contends that Zubarau lacked standing to challenge, in his second and third causes of action, City Zoning Ordinance section 95.03. The City further contends that the challenges are not ripe because Zubarau has not applied for a necessary permit, the challenged parts of the ordinance thus have not adversely been applied to him, and, consequently, he has not exhausted his administrative remedies. We disagree.
A. Standing
“Standing is a jurisdictional issue that . . . must be established in some appropriate manner.” (Waste Management of Alameda County, Inc. v.
*300 County of Alameda (2000) 79 Cal.App.4th 1223, 1232 [94 Cal.Rptr.2d 740].) “As a general principle, standing to invoke the judicial process requires an actual justiciable controversy as to which the complainant has a real interest in the ultimate adjudication because he or' she has either suffered or is about to suffer an injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented to the adjudicator. [Citations.] To have standing, a party must be beneficially interested in the controversy; that is, he or she must have ‘some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.’ [Citation.] The party must be able to demonstrate that he or she has some such beneficial interest that is concrete and actual, and not conjectural or hypothetical.” (Holmes v. California Nat. Guard (2001) 90 Cal.App.4th 297, 314-315 [109 Cal.Rptr.2d 154]; see Coral Construction, Inc. v. City and County of San Francisco (2004) 116 Cal.App.4th 6, 9-10 [10 Cal.Rptr.3d 65] [contractor had standing to challenge the constitutionality of a city ordinance that gave contract bidding preference to minorities, women, and local enterprises without identifying a future contract on which the contractor would bid].) “ ‘[A] person has standing to challenge an ordinance or a statute invalid on its face without first exhausting the licensing or permit procedures. (City of Santa Barbara v. Adamson (1980) 27 Cal.3d 123, 135 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th1 219] ....)’ (Ebel v. City of Garden Grove (1981) 120 Cal.App.3d 399, 409 [176 Cal.Rptr. 312].)” (J. L. Thomas, Inc. v. County of Los Angeles (1991) 232 Cal.App.3d 916, 924 [283 Cal.Rptr. 815].)
Zubarau owns property in the City that is subject to City Zoning Ordinance section 95.03 and participates in amateur radio communications. He has applied for permits for two amateur radio antennae. Zubarau brought an action challenging the facial validity of parts of section 95.03. Zubarau’s ongoing participation in an avocation that is subject to the challenged provisions of City Zoning Ordinance section 95.03 is sufficient to establish a beneficial interest in a justiciable controversy, thus establishing that he had standing to bring his mandate action. (Holmes v. California Nat. Guard, supra, 90 Cal.App.4th at pp. 314-315; Coral Construction, Inc. v. City and County of San Francisco, supra, 116 Cal.App.4th at pp. 9-10.) Moreover, Zubarau had standing to bring his declaratory relief cause of action because it challenged the ordinance’s facial validity. (J. L. Thomas, Inc. v. County of Los Angeles, supra, 232 Cal.App.3d at p. 924.)
B. Ripeness
The City also asserts that Zubarau’s attack on the zoning ordinance is not ripe for the same reasons it claims he lacks standing. “ ‘The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from *301 issuing purely advisory opinions. [Citation.] It is rooted in the fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion. . . . [T]he ripeness doctrine is primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy.’ [Citation.]” (Coral Construction, Inc. v. City and County of San Francisco, supra, 116 Cal.App.4th at pp. 25-26.)
As stated above, Zubarau owns property in the City and participates in an avocation that is subject to City Zoning Ordinance section 95.03. He has applied for permits in connection with the subject of the City’s Zoning Ordinance, and he has been subjected to determinations under the ordinance and subject to those determinations. These facts are sufficient to satisfy the ripeness requirement because they present a “ ‘definite and concrete [controversy] touching the legal relations of parties having adverse legal interests.’ [Citation.]” (Coral Construction, Inc. v. City and County of San Francisco, supra, 116 Cal.App.4th at p. 26.)[8]
II. The Tower Antenna
The City contends that the trial court erred in issuing a writ of mandate on Zubarau’s first cause of action. The writ ordered the City to vacate City Council resolution No. CC 2008-009, denying Zubarau’s appeal concerning removal of the vertical tower antenna.
A. Standard of Review
“ ‘In reviewing the trial court’s ruling on a writ of mandate (Code Civ. Proc., § 1085), the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial evidence. [Citation.] However, the appellate court may make its own determination when the case involves resolution of questions of law where the facts are undisputed. [Citation.]’ [Citation.]” (Coloca v. County of San Diego (1999) 72 Cal.App.4th 1209, 1217 [85 Cal.Rptr.2d 660].)
*302 B. Applicable Principles
Government Code section 65850.3 provides, “Any ordinance adopted by the legislative body of a city or county that regulates amateur radio station antenna structures shall allow those structures to be erected at heights and dimensions sufficient to accommodate amateur radio service communications, shall not preclude amateur radio service communications, shall reasonably accommodate amateur radio service communications, and shall constitute the minimum practicable regulation to accomplish the city’s or county’s legitimate purpose, [f] It is the intent of the Legislature in adding this section to the Government Code, to codify in state law the provisions of Section 97.15 of Title 47 of the Code of Federal Regulations, which expresses the Federal Communications Commission’s limited preemption of local regulations governing amateur radio station facilities.”
As relevant here, part 97.15 of title 47 of the Code of Federal Regulations provides, “Except as otherwise provided herein, a station antenna structure may be erected at heights and dimensions sufficient to accommodate amateur service communications. (State and local regulation of a station antenna structure must not preclude amateur service communications. Rather, it must reasonably accommodate such communications and must constitute the minimum practicable regulation to accomplish the state or local authority’s legitimate purpose. See PRB-1, 101 FCC 2d 952 (1985) for details.)” (47 C.F.R. § 97.15(b) (2010).)
In In the Matter of Federal Preemption of State and Local Regulations Pertaining to Amateur Radio Facilities (PRB-1) (1985) 101 F.C.C.2d 952, paragraph 25, the FCC ruled, “Because amateur station communications are only as effective as the antennas employed, antenna height restrictions directly affect the effectiveness of amateur communications. Some amateur antenna configurations require more substantial installations than others if they are to provide the amateur operator with the communications that he/she desires to engage in. For example, an antenna array for international amateur communications will differ from an antenna used to contact other amateur operators at shorter distances. We will not, however, specify any particular height limitation below which a local government may not regulate, nor will we suggest the precise language that must be contained in local ordinances, such as mechanisms for special exceptions, variances, or conditional use permits. Nevertheless, local regulations which involve placement, screening, or height of antennas based on health, safety, or aesthetic considerations must be crafted to accommodate reasonably amateur communications, and to represent the minimum practicable regulation to accomplish the local authority’s legitimate purpose.” (Fn. omitted.)
*303 In 2000, in In the Matter of Modification and Clarification of Policies and Procedures Governing Siting and Maintenance of Amateur Radio Antennas and Support Structures, and Amendment of Section 97.15 of the Commission’s Rules Governing the Amateur Radio Service (2000) 15 F.C.C.R. 22151, the FCC issued an order on reconsideration that addressed PRB-1 and “amplified” “upon the meaning of ‘reasonable accommodation’ of amateur communications in the context of local land use and zoning regulations.” {Id. at f 8.) The order states, “The [FCC] adopted a limited preemption policy for amateur communications because there is a strong federal interest in promoting amateur communications. We do not believe that a zoning regulation that provides extreme or excessive prohibition of amateur communications could be deemed to be a reasonable accommodation. For example, we believe that a regulation that would restrict amateur communications using small dish antennas, antennas that do not present any safety or health hazard, or antennas that are similar to those normally permitted for viewing television, either locally or by satellite, is not a reasonable accommodation or the minimum practicable regulation. On the other hand, we recognize that a local community that wants to preserve residential areas as livable neighborhoods may adopt zoning regulations that forbid the construction and installation in a residential neighborhood of the type of antenna that is commonly and universally associated with those that one finds in a factory area or an industrialized complex. Although such a regulation could constrain amateur communications, we do not view it as failing to provide reasonable accommodation to amateur communications.” {Ibid.)
Substantial evidence supported the City Council’s decision to deny Zubarau’s appeal of the Commission’s resolution revoking the zoning clearance for SFMM 05-139 and the Commission’s order to remove the tower antenna. The Commission and the City Council found that the installation and operation of Zubarau’s tower antenna (SFMM 05-139) were inconsistent with the purpose and intent of the vertical antenna regulations in City Zoning Ordinance section 95.03A because the tower antenna was not compatible with the surrounding neighborhood; the tower antenna greatly exceeded the height of all residential buildings and accessory structures in the area and created an adverse visual impact on the neighborhood, especially when the tower antenna was raised to its full height with the horizontal antenna array; the tower antenna posed a safety hazard because it could fall in high winds or during seismic activity; the horizontal antenna array extended about three feet into the required 10-foot side yard setback in violation of City Zoning Ordinance section 95.03B.2.b; the operation of the tower antenna interfered with electrical equipment in the neighborhood in violation of City Zoning Ordinance section 95.03B.3; and the height of the active array on the tower antenna exceeded 30 feet. Thus, the City’s action in ordering removal of the tower antenna cannot reasonably be viewed as “extreme or excessive prohibition of amateur *304 communications.” By its resolution, the City Council did not bar all antennae on Zubarau’s property. Instead, the City Council found that the particular 55-foot tower antenna at issue was incompatible with the neighborhood, based in part on safety and aesthetic concerns.
The City Council’s reliance on the tower antenna’s radio frequency interference was improper because, as we explain post, federal law fully preempts matters related to radio frequency interference. Reliance on an improper ground is irrelevant when the decision is supported by other, proper grounds. (See Schroeder v. Municipal Court (1977) 73 Cal.App.3d 841, 847 [141 CaLRptr. 85] [“it is irrelevant to the reasonableness of an ordinance . . . that a member of the planning commission advanced an impermissible ground in denying a permit”].)
Under state and federal law, the City was not required to allow Zubarau to erect a tower antenna of any size he wished, regardless of the tower antenna’s compatibility with the surrounding neighborhood. Instead, the applicable laws required the City to reasonably accommodate amateur radio communications. The City Council did make such accommodation when it granted Zubarau’s appeal with respect to SFMM 05-304, thereby permitting Zubarau to maintain his roof-mounted antenna, which extends to a height of approximately 40 feet, and thus to participate in amateur radio communications. Because substantial evidence supports the Commission’s decision to revoke the zoning clearance for SFMM 05-139, and the City Council Zubarau’s ability to participate in amateur radio communications when it allowed him to keep his roof-mounted antenna, the trial court erred in granting Zubarau’s petition for writ of mandate vacating the City Council’s resolution No. CC 2008-009 concerning the tower antenna.
HI. State and Federal Law Preemption
Zubarau contends that with respect to his second cause of action, the trial court erred in failing to invalidate City Zoning Ordinance section 95.03B.3 because the section regulates radio frequency interference, a matter entirely preempted by federal law. Zubarau also contends that the trial court erred in failing to grant his petition for writ of mandate to invalidate as preempted by state and federal law the 30-foot maximum height limitation for the “active element of an antenna array” in City Zoning Ordinance section 95.03B.1. Zubarau’s writ petition with respect to the regulation of radio frequency interference should have been granted. We need not reach the issue of whether the trial court properly denied Zubarau’s writ petition with respect to the height limitation for the “active element of an antenna array” because, as we explain post, the provision containing that height limitation is unconstitutionally vague.
*305 A. Standard of Review
Zubarau’s contentions raise a question of law on undisputed facts— whether City Zoning Ordinance section 95.03B.3 is preempted by state or federal law. As such, we make our own determination of whether the writ petition should have been granted. (Caloca v. County of San Diego, supra, 72 Cal.App.4th at p. 1217.) Whether an ordinance is valid is a question of law. (Fisher v. City of Berkeley (1984) 37 Cal.3d 644, 654, fn. 2 [209 Cal.Rptr. 682, 693 P.2d 261]; Garcia v. Four Points Sheraton LAX (2010) 188 Cal.App.4th 364, 373 [115 Cal.Rptr.3d 685] [preemption]; California Veterinary Medical Assn. v. City of West Hollywood (2007) 152 Cal.App.4th 536, 546 [61 Cal.Rptr.3d 318].) “Statutory construction is a question of law for the courts and the rules of statutory construction applicable to statutes are also applicable to local ordinances. [Citation.]” {Rodriguez v. Solis (1991) 1 Cal.App.4th 495, 502 [2 Cal.Rptr.2d 50].) Whether a law is preempted is an issue of law, reviewed de novo. {Farm Raised Salmon Cases (2008) 42 Cal.4th 1077, 1089, fn. 10 [72 Cal.Rptr.3d 112, 175 P.3d 1170] [“federal preemption presents a pure question of law”]; Whisman v. San Francisco Unified Sch. Dist. (1978) 86 Cal.App.3d 782, 793 [150 Cal.Rptr. 548] [effect of state law on local charter provision is “a naked issue of law”].)
B. Applicable Principles
“To obtain writ relief under Code of Civil Procedure section 1085, the petitioner must show there is no other plain, speedy, and adequate remedy; the respondent has a clear, present, and ministerial duty to act in a particular way; and the petitioner has a clear, present and beneficial right to performance of that duty. [Citation.] A ministerial duty is one that is required to be performed in a prescribed manner under the mandate of legal authority without the exercise of discretion or judgment.” (County of San Diego v. State of California (2008) 164 Cal.App.4th 580, 593 [79 Cal.Rptr.3d 489].) “Mandamus is . . . appropriate for challenging the constitutionality or validity of statutes or official acts. [Citations.]’ [Citation.]” (Wenke v. Hitchcock (1972) 6 Cal.3d 746, 751 [100 Cal.Rptr. 290, 493 P.2d 1154].)
The legislative history of the 1982 amendment to the Communications Act of 1934, 47 U.S.C. § 151 et seq., provides, “The Conference Substitute is further intended to clarify the reservation of exclusive jurisdiction to the Federal Communications Commission over matters involving RFI [radio frequency interference]. Such matters shall not be regulated by local or state law, nor shall radio transmitting apparatus be subject to local or state regulation as part of any effort to resolve an RFI complaint. . . . [T]he Conferees intend that regulation of RFI phenomena shall be imposed only by the Commission.” (H.R.Rep. No. 97-765, 2d Sess., p. 33 (1982), reprinted in *306 1982 U.S. Code Cong. & Admin. News, p. 2277; see In re 960 Radio, Inc. (F.C.C., Nov. 4, 1985, No. FCC 85-578) 1985 WL 193883, p. *2.) In 960 Radio, Inc., the FCC, in a memorandum opinion and declaratory ruling, ruled that “federal power in the area of radio frequency interference is exclusive; to the extent that any state or local government attempts to regulate in this area, their regulations are preempted.” (1985 WL 193883 at p. *3.) An agency declaration of preemption can preempt unless the authorizing statute or legislative history of the statute is to the contrary. (City of New York v. FCC (1988) 486 U.S. 57, 63 [100 L.Ed.2d 48, 108 S.Ct. 1637]; Fidelity Federal Sav. & Loan Assn. v. de la Cuesta (1982) 458 U.S. 141, 152-154 [73 L.Ed.2d 664, 102 S.Ct. 3014]; Lynnbrook Farms v. Smithkline Beecham Corp. (7th Cir. 1996) 79 F.3d 620.) No such Congressional indication of nonpreemption has been brought to our attention.
City Zoning Ordinance section 95.03B.3 provides, “Interferences. The operation of the antenna shall not cause interference with any electrical equipment in the surrounding neighborhoods (e.g. television, radio, telephone, computer, etc.), unless exempted by Federal regulation.” Such purported regulation of radio frequency interference concerns an area over which the FCC has exclusive jurisdiction. (In re 960 Radio, Inc., supra, 1985 WL 193883 at pp. *2, *3.) Accordingly, the trial court should have granted Zubarau’s writ petition invalidating the challenged part of the zoning ordinance.
The City argues that Zubarau’s preemption claim with respect to radio frequency interference is barred by the statute of limitations in Government Code section 65009, subdivision (c)(1)(B). The City’s argument is unavailing because even if that section applied to Zubarau’s preemption claims, the City forfeited any statute of limitations defense by failing to raise it in the trial court. (Union Sugar Co. v. Hollister Estate Co. (1935) 3 Cal.2d 740, 745 [47 P.2d 273]; Bohn v. Watson (1954) 130 Cal.App.2d 24, 36-37 [278 P.2d 454].) The City contends that it did not forfeit the statute of limitations defense because Zubarau did not raise a facial challenge to the ordinance in the trial court, but raised such a challenge for the first time in his reply brief on appeal. Zubarau’s second cause of action for writ of mandate, however, specifically alleges, “Zoning Code § 95.03 B.3 is invalid because the field of Radio Frequency Interference is preempted by the Federal Government.” Such an allegation is a facial challenge to the asserted regulation of radio frequency interference by City Zoning Ordinance section 95.03B.3.
The City also argues that the purported regulation of radio frequency interference by City Zoning Ordinance section 95.03B.3 is saved by the section’s language permitting such regulation “unless exempted by Federal regulation.” Because federal regulation of this area is exclusive and preemption of state and local laws is complete, there is no ordinance concerning *307 radio frequency interference that the City may enact that is not preempted. However this provision is interpreted, because of federal preemption, the ordinance cannot be applied to deal with radio frequency interference at all, and a provision that does so is invalid.
IV. Vagueness of Provision
Zubarau contends that the trial court erred in rejecting his third cause of action for a judgment declaring City Zoning Ordinance section 95.03B.1 unenforceable because it is confusing, unintelligible, contradictory, and may be applied in an arbitrary way. Zubarau’s third cause of action and his claim on appeal are construed fairly to state a claim that the challenged section is void because it is unconstitutionally vague. City Zoning Ordinance section 95.03 (“Vertical Antennae”) contains section 95.03B which provides: “The installation of residential single-pole or tower, roof or ground mounted, television or amateur radio antennae may be permitted in all agricultural and residential zones in accordance with the following: [f] 1. Height. Maximum height of the antennae shall not exceed seventy-five (75) feet measured from the grade to the highest point of the antenna. Maximum height of the active element of the antenna array shall be thirty (30) feet or less except as otherwise regulated by FAA or FCC.” Section 10.05B of the City Zoning Ordinance provides, “Any person violating any provision of this Zoning Ordinance, or any amendment thereto, is guilty of a misdemeanor. Each violation is a separate offense for each and every day during any portion of time during which the violation is committed and is subject to the penalties specified in Chapter 1.12 of the Palmdale Municipal Code.”
Zubarau considers City Zoning Ordinance section 95.03B.1 to be defectively vague because it permits 75-foot vertical antennae, but limits the “active element” of antenna arrays to a height of 30 feet without defining the term “active element of the antenna array” or reconciling the differing 75-foot and 30-foot height limitations. We agree that the section is impermissibly vague.
A. Standard of Review
On appeal, construction of a local ordinance is a question of law for the courts. (Rodriguez v. Solis, supra, 1 Cal.App.4th at p. 502.) The determination of a statute’s constitutionality is a question of law that we review de novo. (People v. Health Laboratories of North America, Inc. (2001) 87 Cal.App.4th 442, 445 [104 Cal.Rptr.2d 618].) We apply the rules of statutory construction applicable to statutes to local ordinances. (Rodriguez v. Solis, supra, 1 Cal.App.4th at p. 502.) “All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a *308 judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears.” (Lockheed Aircraft Corp. v. Superior Court (1946) 28 Cal.2d 481, 484 [171 P.2d 21].)
B. Applicable Principles
A plaintiff may test the validity of a zoning ordinance in a declaratory relief action. (Viso v. State of California (1979) 92 Cal.App.3d 15, 22 [154 Cal.Rptr. 580]; see C. Dudley De Velbiss Co. v. Kraintz (1951) 101 Cal.App.2d 612, 615-616 [225 P.2d 969] [action for a declaratory judgment that county building ordinances were void for vagueness].) “Civil as well as criminal statutes must be sufficiently clear as to give a fair warning of the conduct prohibited, and they must provide a standard or guide against which conduct can be uniformly judged by courts and administrative agencies.” (Morrison v. State Board of Education (1969) 1 Cal.3d 214, 231 [82 Cal.Rptr. 175, 461 P.2d 375]; see 5 McQuillin, The Law of Municipal Corporations (3d ed. 2004) § 15:22, pp. 203-206 [“An ordinance must be clear, precise, definite, and certain in its terms, and an ordinance vague to the extent that its precise meaning cannot be ascertained is invalid, although otherwise it is constitutional and valid” (fns. omitted)]; 4 Ziegler, Rathkopf’s The Law of Zoning and Planning (4th ed. 2010) § 65:36, pp. 65-90 to 65-91 [“Where the terms of a zoning ordinance are so vague as to not give sufficient notice of what precisely is permitted or prohibited, this vagueness is a violation of due process” (fn. omitted)].) An ordinance that declares a violation thereof to be a misdemeanor or even an infraction “constitutes a penal statute which must satisfy the due process requirement that it not be vague.” (Personal Watercraft Coalition v. Marin County Bd. of Supervisors (2002) 100 Cal.App.4th 129, 140 [122 Cal.Rptr.2d 425].)
“ ‘Reasonable certainty is all that is required. A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language.’ [Citation.] It will be upheld if its terms may be made reasonably certain by reference to other definable sources [citation].” (American Civil Liberties Union v. Board of Education (1963) 59 Cal.2d 203, 218 [28 CaL.Rptr. 700, 379 P.2d 4].)
Our Supreme Court has discussed the void for vagueness concept as follows: “ ‘a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.’ (Connally v. General Construction Co. (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 46 S.Ct. 126, 127].) [][]... [A] law that is ‘void for vagueness’ not only fails to provide adequate notice to those who must observe its strictures, but also ‘impermissibly delegates basic policy matters *309 to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.’ (Groyned v. City of Rockford [(1972)] 408 U.S. [104,] 108-109 [33 L.Ed.2d 222, 92 S.Ct. 2294, 2298-2299], fh. omitted.) [][]... [A] claim that a law is unconstitutionally vague can succeed only where the litigant demonstrates, not that it affects a substantial number of others, but that the law is vague as to her or ‘impermissibly vague in all of its applications’ (Hoffman Estates v. Flipside, Hoffman Estates (1982) 455 U.S. 489, 497-498 [71 L.Ed.2d 362, 102 S.Ct. 1186, 1193], italics added; see also Parker v. Levy (1974) 417 U.S. 733, 755-757 [41 L.Ed.2d 439, 94 S.Ct. 2547, 2561-2562]; Tribe, American Constitutional Law (2d ed. 1988) § 12-32, p. 1036.)” (People ex rel. Gallo v. Acuna (1997) 14 Cal.4th 1090, 1115-1116 [60 Cal.Rptr.2d 277, 929 P.2d 596].) “A facial challenge must fail if courts can conceive of a single situation in which the legislative enactment can be constitutionally applied. [Citations.] Success comes only if the challenge demonstrates that the law is uncertain ‘under any and all circumstances’ [citation].” {Personal Watercraft Coalition v. Marin County Bd. of Supervisors, supra, 100 Cal.App.4th at p. 138.)
The California Supreme Court set “a pair of principles endorsed by the United States Supreme Court as reliable guides for applying the doctrine in particular cases. The first principle is derived from the concrete necessity that abstract legal commands must be applied in a specific context. ...[][] The second guiding principle is the notion of ‘reasonable specificity’ . . . .” (People ex rel. Gallo v. Acuna, supra, 14 Cal.4th at pp. 1116-1117, italics omitted.)
Notwithstanding that there are definitions of terms “active element” and “antenna array” (see fn. 3, ante), City Zoning Ordinance section 95.03B.1 remains uncertain. The parties have not set forth any comprehensible definition of the terms as they are used in that section, nor have they provided any logical meaning of the provision. Section 95.03B of the City Zoning Ordinance refers to the installation of a “single-pole or tower, roof or ground-mounted, television or amateur radio antennae” that may be permitted so long as the height of the antennae does not exceed 75 feet “measured from the grade to the highest point of the antenna.” Another restriction is that the “[m]aximum height of the active element of the antenna array shall be” 30 feet. The provision shifts inexplicably between singular and plural and does not define the terms in the context used.
The subject of the provision is a vertical “single-pole or tower.” The height limitation is measured from the grade—presumably from the ground. The City zoning ordinance does not specify from where the height of the “active element of the antenna” is to be measured, although the City states that it too must be measured from the ground. We are left to wonder about reconciling a *310 height restriction of a vertical “single-pole or tower” antenna of 75 feet with a 30-foot height restriction for the active element of antenna array for a vertical “single-pole” or “tower” antenna. Without some further definitions of the terms in context, the language does not meet the test of “reasonable specificity.” The City has not provided us with, nor can we discern, any circumstances under which the provision is sufficiently certain.
The City contends that the inconsistency in City Zoning Ordinance section 95.03B.1 can be reconciled by interpreting the 75-foot height limitation to apply to vertical antennae and the 30-foot height limitation to apply to horizontal antennae array. Such a reconciliation is unreasonable because the 75-foot and 30-foot height limitations are part of a zoning ordinance that by its terms applies solely to vertical antennae and that does not, in any of its parts, refer to horizontal antennae. Section 95.03 is entitled “Vertical Antennae.” Section 95.03A states that the “Purpose and intent” of the regulations in City Zoning Ordinance section 95.03 are to “provide standards for residential vertical television or amateur radio antennae that will ensure that such antennae are compatible with the surrounding neighborhood by preventing adverse visual, health, safety, and other impacts on the surrounding properties and/or the community.” (Italics added.) As stated in City Zoning Ordinance section 95.03’s “Review process,” set forth in section 95.03C, “Vertical antennae shall be subject to administrative approval in accordance with Article 26.” (Italics added.) Accordingly, City Zoning Ordinance section 95.03 applies by its terms only to vertical antennae, and the 75-foot and 30-foot height limitations cannot be reconciled.
The City then suggests that unlike a single-pole antenna operating independently, if there were vertical antennae “working together to create a single antenna with multiple components or . . . changing the radiation pattern from the pattern of each of the vertical antennae acting independently,” they would be treated as an array and limited to 30 feet in height. But the ordinance covers single-pole antennae. And the City offers no explanation of how the requirement of “the active element” fits into the 30-foot height restriction. It is also difficult to comprehend why multiple vertical antennae, when independent of each other, can be 75 feet high but “vertical antennae” working together, should have a 30-foot height limitation.
There is no indication that the measurement “from the grade” is any different for the 75-foot requirement and the 30-foot requirement. The 30-foot requirement does not otherwise specify the point of measurement. The City *311 does not even argue such a distinction. Indeed, the City asserts that “the use of the term ‘height’ in [the ordinance] . . . consistently refers to distance measured from the ground to the highest point of the particular type of antenna.”
Section 93.03B.1 of the City Zoning Ordinance is too uncertain to avoid being viewed as fatally vague. Accordingly, that provision is impermissibly vague, and the trial court erred in denying Zubarau’s request for a judgment declaring the provision unenforceable. It may well be that the City’s intentions, whatever they may be, can be promulgated in an understandable and consistent manner.
V. Attorney Fees Claim
Zubarau contends that the trial court erred when it denied his Code of Civil Procedure section 1021.5[9] (section 1021.5)[10] request for attorney fees as the successful party on his first cause of action. A trial court “may award attorney fees under section 1021.5 only if the statute’s requirements are satisfied. Thus, a court may award fees only to ‘a successful party’ and only if the action has ‘resulted in the enforcement of an important right affecting the public interest. . . .’ (Ibid.) Three additional conditions must also exist: ‘(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.’ ” (Vasquez v. State of California (2008) 45 Cal.4th 243, 250-251 [85 Cal.Rptr.3d 466, 195 P.3d 1049].)
Because we reversed the trial court’s grant of Zubarau’s petition for writ of mandate as to his first cause of action, Zubarau is no longer a successful party who may be entitled to attorney fees under section 1021.5 with respect to that cause of action. Because we partially reversed the trial court’s denial of Zubarau’s second cause of action and entirely reversed the trial court’s denial of Zubarau’s third cause of action, however, Zubarau may assert that he is the *312 successful party entitled to attorney fees under section 1021.5 as to those causes of action. Accordingly, we remand this matter to the trial court so that Zubarau may move for attorney fees with respect to his second and third causes of action. If Zubarau so moves, the trial court shall determine if Zubarau is entitled to attorney fees.
DISPOSITION
The trial court’s writ of mandate vacating the City of Palmdale’s order to remove Zubarau’s tower antenna (first cause of action) is reversed. The trial court’s denial of a writ of mandate invalidating City of Palmdale Zoning Ordinance section 95.03B.3’s regulation of radio frequency interference (portion of second cause of action) and its denial of a declaration that City of Palmdale Zoning Ordinance section 95.03B.1 is unenforceable as vague (third cause of action) are reversed. The trial court’s denial of Zubarau’s request for attorney fees in connection with his first cause of action is affirmed. The matter is remanded to the trial court to allow Zubarau to move for an award of attorney fees as to his second and third causes of action. The parties are to bear their own costs on appeal.
Armstrong, J., concurred.

 The City of Palmdale and its agencies are referred to as the City.

 City Zoning Ordinance section 95.03B.1 provides: “Maximum height of the active element of the antenna array shall be thirty (30) feet or less . . . .”

 The American Radio Relay League, Incorporated (League), a self-described educational and scientific organization that is the “principal representative and advocate for the more than 650,000 federally licensed Amateur Radio operators in the United States,” filed an amicus curiae brief on Zubarau’s behalf. The League defines an “antenna array” as an “interactive grouping of multiple antennas, or, less frequently, a single antenna with multiple components, such as a horizontal (or vertical) directional parasitic array of antenna elements referred to as a ‘Yagi’ type antenna, typically and normally found in urban, suburban and rural residential neighborhoods throughout the United States.” The League states that, “in the parlance of radio antenna technology, an active element is the portion of the antenna to which radio frequency energy is applied through a transmission feedline from a radio transmitter, and/or which is connected by that transmission feedline to a radio receiver.” Another authority states, “When antenna radiators are arranged in a precision array, an increase in gain occurs. An array might be a series of dipole elements, as in the broadside array ... or a series of slots, horns, or other radiators. ...[][] The active element contains, in addition to a phase shifter, a transmit power amplifier . . . and a low-noise amplifier ... for receiving.” (Carr, Practical Antenna Handbook (4th ed. 2001) pp. 409, 411.)

 The notice misidentified this SFMM as SFMM 05-134.

 City Zoning Ordinance section 95.03A (“Purpose and intent”), provides, “It is the purpose of these regulations to provide standards for residential vertical television or amateur radio antennae that will ensure that such antennae are compatible with the surrounding neighborhood by preventing adverse visual, health, safety, and other impacts on the surrounding properties and/or the community.”

 City Zoning Ordinance section 95.03B, “Development standards for residential zones,” provides:
“The installation of residential single-pole or tower, roof or ground mounted, television or amateur radio antennae may be permitted in all agricultural and residential zones in accordance with the following:
“1. Height. Maximum height of the antennae shall not exceed seventy-five (75) feet measured from the grade to the highest point of the antenna. Maximum height of the active element of the antenna array shall be thirty (30) feet or less except as otherwise regulated by FAA or FCC.
“2. Setbacks. The following setbacks shall be required measured from the closest point of the structure to the property line:
“a. Minimum rear yard setback shall be ten (10) feet;
“b. Minimum interior side yard setback shall be ten (10) feet;
“c. Minimum street side yard setback shall be fifteen (15) feet;
“d. No vertical antenna shall be located within the front yard.
“3. Interferences. The operation of the antenna shall not cause interference with any electrical equipment in the surrounding neighborhoods (e.g. television, radio, telephone, computer, etc.), unless exempted by Federal regulation.”

 Government Code section 65850.3 concerns the regulation of “amateur radio service communications.” The section is quoted in full in part KB., post.

 Moreover, contrary to the trial court’s finding, Zubarau’s second cause of action is not moot. Zubarau brought a cause of action challenging the facial validity of part of City Zoning Ordinance section 95.03, which cause of action Zubarau did not abandon. (See Breaux v. Agricultural Labor Relations Bd. (1990) 217 Cal.App.3d 730, 743 [265 Cal.Rptr. 904] [“While issues which may someday be, but are not yet, justiciable are sometimes said not to be ‘ripe,’ issues which have been, but (by virtue of intervening acts or events) are no longer, justiciable may be said to be ‘moot.’ ”].)

 Code of Civil Procesure section 1021.5 provides, in relevant part, “Upon motion, a court may award attorneys’ fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.”

 In his appeal, Zubarau does not address the trial court’s denial of attorney fees pursuant to Government Code section 800.